FILED

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

2020 FEB 19 P 1: 11

CLERK US DISTRICT COURT

JAMES TOLLE,

Civil Action No. 1:20 cv 174

Plaintiff,

COMPLAINT

v.

ROCKWELL COLLINS CONTROL TECHNOLOGIES, INC., COLLINS AEROSPACE /d/b/a
Rockwell Collins Control Technologies, Inc., ROCKWELL COLLINS CONTROL
TECHNOLOGIES, INC. d/b/a Rockwell Collins, Inc., ROCKWELL COLLINS, INC.,
COLLINS AEROSPACE d/b/a Rockwell Collins, Inc., ROCKWELL COLLINS CONTROL
TECHNOLOGIES, INC. /d/b/a United Technologies Corporation, ROCKWELL COLLINS,
INC. /d/b/a United Technologies Corporation, COLLINS AEROSPACE /d/b/a United
Technologies Corporation, and UNITED TECHNOLOGIES CORPORATION

Defendants.

Plaintiff James Tolle (hereinafter "Tolle" or "Plaintiff"), *pro se* for his Complaint against

Defendants Rockwell Collins Control Technologies, Inc., Collins Aerospace /d/b/a Rockwell

Collins Control Technologies, Inc., Rockwell Collins Control Technologies, Inc. /d/b/a Rockwell

Collins, Inc., Rockwell Collins, Inc., Collins Aerospace /d/b/a Rockwell Collins, Inc., Rockwell

Collins Control Technologies, Inc. /d/b/a United Technologies Corporation, Rockwell Collins,

Inc. /d/b/a United Technologies Corporation, Collins Aerospace /d/b/a United Technologies

Corporation, and United Technologies Corporation (hereinafter "Rockwell Collins" or

"Defendants" individually and together),  alleges as follows:

NATURE OF CLAIMS

1.      This is an action for damages brought pursuant to the Civil Rights Act of 1964, as

amended, (hereinafter, the "Civil Rights Act"), 42 U.S.C. §§ 2000e *et seq*.

2.      Defendants Rockwell Collins unlawfully discriminated against Tolle and/or

subjected him to an unfair and hostile work environment by forcing Tolle to endure offensive

conduct or object which was serious and pervasive enough for a reasonable person to find it to be intimidating, hostile or an interference to work based on his religious beliefs and practices.

3.      Defendants Rockwell Collins unlawfully discriminated against Tolle by forcing Tolle to endure unwelcome and offensive conduct or object based on Tolle's religious beliefs as a condition of continued employment and this led to Tolle's constructive discharge from the company.

4.      Defendants Rockwell Collins unlawfully discriminated against Tolle based on religion because Rockwell Collins failed to offer Tolle any accommodation of his religious practices following Tolle's complaints about the offensive conduct or object, refusing to offer Tolle any reasonable accommodation which would allow him to continue working without being exposed to a religiously offensive object while there was  no undue hardship for the company.

5.      Defendants Rockwell Collins unlawfully discriminated against Tolle and/or subjected him to an unfair and hostile work environment by causing Tolle to believe that Tolle had to alter or abandon his religious practice in order to continue working at the company and this led to Tolle's constructive discharge from the company.

6.      Defendants Rockwell Collins unlawfully discriminated against Tolle and/or subjected him to an unfair and hostile work environment during hiring by causing Tolle to believe that Tolle had to alter or abandon his religious practice in order to continue working at the company and this led to Tolle not being able to accept Rockwell Collins' offer of employment.

7.      Defendants Rockwell Collins unlawfully discriminated against Tolle based on religion by using an employment practice not essential to the business which is unwelcoming to Christians and has a disparate impact on Christians who work at or apply to the company.

8.      Defendants Rockwell Collins willfully and repeatedly violated the Civil Rights

2

Act. Rockwell Collins' discriminatory practices were reckless, callous and/or indifferent to Tolle's federally protected rights.

JURISDICTION AND VENUE

9.     This action is within the jurisdiction of this Court, pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5.

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), insofar as the events and/or omissions giving rise to Tolle's claims occurred in this judicial district, and pursuant to 42 U.S.C. § 2000e-5, insofar as Rockwell Collins maintains a place of business in this judicial district.

PARTIES

11.     Tolle was a resident of the Commonwealth of Virginia. Tolle worked for Rockwell Collins Control Technologies at Rockwell Collins as a contracted employee from in or around April, 2016, until in or around May, 2018, when his contract ended. Tolle was a resident of the County of Prince William, during this time and worked at Rockwell Collins in Warrenton, Virginia, until in or around February, 2018. After in or around February, 2018, Tolle was a resident of the County of Prince William but commuted to Sterling, Virginia, for work at Rockwell Collins until in or around May, 2018 when his first contract ended. In or around November 2018, Tolle resumed work at Rockwell Collins as a contracted employee in Sterling, Virginia. During the entire period of this work, the nature of Tolle's work made Tolle a statutory employee due to the following reasons:

a.     Tolle was assigned a desk, personal computer and other equipment within Rockwell Collins office spaces;

b.     Tolle reported directly to the Rockwell Collins Control Technologies Engineering Manager, Mr. Amine Mechiche-Alami, as his supervisor (hereinafter, "Mechiche-

3

Alami");

      c.  Tolle's daily work assignments were assigned and supervised by a Rockwell Collins employees;

      d.  Tolle's provided services which were part of Rockwell Collins' regular business and Tolle's work was part of Rockwell Collins' regular projects and regular business;

      e.  Tolle had no investment in the work, facilities or equipment used for Rockwell Collins' work performed by Tolle;

      f.  Rockwell Collins controlled details of Tolle's work and Rockwell Collins' management retained control over all of Tolle's work;

      g.  Rockwell Collins retained all copyrights to all of Tolle's work at Rockwell Collins as "work for hire";

      h.  Tolle did not have the opportunity to make a profit or incur a loss during his work for Rockwell Collins because Tolle was paid on an hourly basis for all work performed;

      i.  Tolle's skill level and judgments related to the work at Rockwell Collins was not specialized or unique compared to that of other Rockwell Collins' employees within the Rockwell Collins Control Technologies team;

      j.  Except for the break between on or around May, 2018, to on or around November, 2018, Tolle was employed for an extended, continuous period by Rockwell Collins; at the time of Tolle's constructive discharge, Tolle was employed for an extended, continuous period which was expected to continue after the time of his constructive discharge;

      k. Tolle was not engaged in business or occupation distinct from that of Rockwell Collins;

      l.  Rockwell Collins provided Tolle all instrumentation and tools and provided the office and laboratory location of Tolle's work place;

4

m. Tolle's time was reimbursed based on an hourly rate for hours worked on Rockwell Collins' projects;

n. Tolle and Rockwell Collins intended to create an employer-employee relationship during Tolle's application for employment and prior to his constructive discharge;

o. Tolle's constructive discharge occurred after Tolle gave Rockwell Collins 2-weeks notice; and

p. The totality of the circumstances surrounding the relationship between Tolle and Rockwell Collins gave rise to Tolle's statutory employee status while working at Rockwell Collins.

12. Tolle has been a member of the Roman Catholic parish of Holy Trinity in Gainesville, Virginia, since in or around 2014, and frequently participates in services at the Church.

13. In or around August 2019, Tolle applied for employment with Rockwell Collins and received an offer of employment from Rockwell Collins. On or around September 3, 2019, Tolle informed Rockwell Collins that he could not accept the position due to the continuing discriminatory policies of Rockwell Collins and because he would have to abandon or alter his religious practice in order to continue working in any role at Rockwell Collins. Due to the discriminatory policies and practices of Rockwell Collins, Tolle could not continue working at Rockwell Collins and left his position in or around October 2019 after a constructive discharge.

14. At all material times hereto, Rockwell Collins Control Technologies, Inc. is/was an entity owned and operated by Rockwell Collins, Inc. Prior to on or around November 26, 2018, Rockwell Collins, Inc., is/was a corporation incorporated under the laws of the State of Delaware with offices in Cedar Rapids, Iowa.

15. Since on or around November 26, 2018, Rockwell Collins is/was a wholly-owned

subsidiary of United Technologies Corporation, a corporation incorporated under the laws of the State of Delaware and registered as a foreign business corporation in the Commonwealth of Virginia with offices in Sterling, Virginia.

16. At all material times hereto, United Technologies Corporation is/was a corporation incorporated under the laws of the State of Delaware with offices in Farmington, Connecticut.

17. According to the Virginia State Corporation Commission public records, C T Corporation System, 4701 Cox Rd Ste 285, Glen Allen, VA 23060-6808, is the registered agent for Rockwell Collins Control Technologies, Inc., Rockwell Collins, Inc., and United Technologies Corporation, comprising the Defendants.

## LEAVE OF COURT REQUESTS

18. Tolle is a *pro se* plaintiff who has never filed in this Court prior to the present complaint. Tolle respectfully requests leave of the Court to consider the present complaint despite any non-material errors in the present complaint, including any typographical errors, errors in format or length, or any other errors which make the present complaint non-compliant with the rules of the Court, which is requested in order to serve the interests of justice and to avoid injury to Plaintiff's due process rights. In particular, if the complaint is non-conforming to any limits on page length, the leave of the Court is respectfully requested to allow all of the pages in the present complaint as the Plaintiff requires a complaint of this length in order to include all of the causes of action necessary and to properly state all claims with the sufficient factual allegations, which is requested in order to serve the interests of justice and to allow Tolle all rights to due process.

19. Tolle respectfully requests leave of the Court to cure any error or defect in service

related to this complaint prior to final consideration of Plaintiff's complaint, which is requested in order to serve the interests of justice and to avoid injury to Plaintiff's due process rights.

20.     Tolle respectfully requests leave of the Court to correct any other errors found in the present complaint and cure any other defects or omissions by amendment prior to final consideration of Plaintiff's complaint by the Court, which is requested in order to serve the interests of justice and to avoid injury to Plaintiff's due process rights.


## FACTUAL ALLEGATIONS

**Tolle's Employment at Rockwell Collins**

21.     In or around April, 2016, Tolle began working for Rockwell Collins Controls Technologies (hereinafter "RCCT") at Rockwell Collins in Warrenton, Virginia.  At all times during his work at Rockwell Collins, Tolle worked through the Bentley Global Resources' staffing contract with the Rockwell Collins' employment agency.

22.     Tolle's immediate supervisor was Amine Mechiche-Alami, a Rockwell Collins manager, during all periods of his work for Rockwell Collins.

23.     In or around February 2018, the RCCT group moved to Sterling, Virginia and Tolle began work for Rockwell Collins in Sterling, Virginia.

24.     In or around May 2018, Tolle ended his contract work for Rockwell Collins. Tolle's contract ended after the duration of Tolle's work passed the limit of the contract extensions allowed by Rockwell Collins subcontract policies.

25.     In or around November 2018, Tolle was invited back to work with RCCT at Rockwell Collins and Tolle started working in Sterling, Virginia, for RCCT in or around November 2018.

26.     In or around June 2018, Amine Mechiche-Alami discussed Tolle being hired as a

regular employee by Rockwell Collins.

27.     In or around August 2018, Tolle applied for a position at Rockwell Collins for the RCCT in Sterling, Virginia.

28.     On or around September 3, 2019, Tolle informed Rockwell Collins that he could not accept the position due to the continuing discriminatory policies of Rockwell Collins and because he would have to abandon or alter his religious practice in order to continue working in any role at Rockwell Collins.

29.     Due to the discriminatory policies and practices of Rockwell Collins, Tolle could not continue working at Rockwell Collins and left his work at Rockwell Collins in or around October 2019 after a constructive discharge.

**Discriminatory Conduct of Rockwell Collins**

30.     In or around June 2019, Rockwell Collins executed its policy to display a symbol of the Gay Pride movement on its flag pole over all or almost all of its locations for 30 days, which included the Sterling location of Rockwell Collins where Tolle had worked continuously from on or around February, 2018, to on or around May, 2018, and again from on or around November, 2018, to on or around October, 2019.  Tolle, who had worked for approximately 20 years with the aerospace and defense industries, had never seen the Gay Pride flag flown in this manner at any other company in the past.  Tolle had never seen the Gay Pride flag flown at Rockwell Collins locations before, including at the two locations where he had worked in Warrenton or in Sterling.

31.     On or around June 15, 2019, Tolle met with his supervisor Amine Mechiche-Alami to complain that Tolle found the display of the Gay Pride flag at the Sterling location unwelcome and offensive because of his religious belief and practices.  Tolle told Mechiche-Alami words to the effect that the display of this offensive object over the work location for 30

days was so pervasive and offensive due to his religious reasons that it created an unwelcome, hostile environment which interfered with his work at that location. He told Mechiche-Alami that continuing to work at a location that flew a Gay Pride flag was contrary to his religious practice, which did not allow him to participate in any activity which publicly associated him with the Gay Pride movement. Tolle told Mechiche-Alami that he would prefer to be able to work offsite or at another location where this offensive object was not being displayed as an accommodation of his religious beliefs during this meeting.

32.     On or around June 27, 2019, Tolle followed up his discussion with an e-mail to Mechiche-Alami that stated: "...I will probably go home to work offsite as I still don't feel comfortable working under a flag which I find offensive for religious reasons." Tolle sent this e-mail to underscore how unwelcome the display of the offensive object was and how it was interfering with his work at the site.

33.     Tolle received no indication of action by Mechiche-Alami to address his complaints in or around June 2019 and received no response to his request for accommodation from Mechiche-Alami. On or around July 9, 2019, Tolle met with an RTTC engineering manager, Eric Brewer, to report that Tolle found the flying of the Gay Pride flag offensive due to religious reasons and that if it was the policy for Rockwell Collins to fly this every year, this would create an offensive or hostile work environment under which Tolle could not continue to work. Tolle also asked Brewer if it would be possible to find out if the Gay Pride flag which was offensive to Tolle due to religious beliefs and practice would be flown at every location in the company or if it would be possible to find a location where he could work as an accommodation of his religious beliefs and practices. Brewer told Tolle he would look into the matter and on or around July 9, 2019, Brewer sent Tolle an e-mail contact for the Human Resources representative who may be able to answer Tolle's questions.

34.     On or around July 17, 2019, Tolle forwarded his complaint of the unfair and hostile work place caused by the display of the Gay Pride flag to the Human Resources representative Julie Jones (hereinafter, the "Human Resources representative").  Tolle's e-mail on or around July 17, 2019 stated his concerns about the unfair and hostile work place which the Rockwell Collins' discriminatory practices caused as follows:

a)  "I view this flag as something which is not neutral, but something which promotes one minority's viewpoint about pride in homosexual lifestyles and treats other minority viewpoint's [*sic.*] who don't agree with them as bigots."

b)  "For the almost 3 years I have worked with Rockwell Collins, I have never seen another minority flag flown over the company except this one [Gay Pride flag]."

c)  "...as someone who has religious convictions which do not make me proud of Homosexuality or support the Gay Pride agenda, I was very disappointed to see...[Rockwell Collins]...promoting this flag and signaling that people with religious convictions like mine need not apply."

d)  "The concerns I have about applying for a job with...[Rockwell Collins]...is whether the public display of the Gay Pride flag by the company means that...[Rockwell Collins]...is not welcoming to people who do not share the agenda that the flag undeniably represents."

e)  "If I am employed by...[Rockwell Collins]...will I be required to support the flying of the Gay Pride flag every year and support the agenda it represents?"

f)  "If I say something as an employee which does not support the flying of the Gay Pride flag...will I face discipline or other adverse actions by management?"

g)  "Without any more information, I am left with the feeling that...[Rockwell Collins]...is not a place where a Christian who does not support Gay Pride should work."

35.     Tolle's e-mail on or around July 17, 2019, also repeated his request for an

accommodation of his religious beliefs and practices by finding another location where he could work without being exposed to the offensive object: "If the company is committed to flying the Gay Pride flag every year, are there locations within the company which will not have to work under this flag?"

36.     Tolle's e-mail on or around July 17, 2019, makes it clear to Rockwell Collins management representatives that the display of the object which he finds offensive due to religious reasons is not only unwelcome to him, but he also raises the question that the company policy appears to create a preference which is not welcoming of anyone who finds the display of that object offensive for religious reasons: "The concerns I have about applying for a job with... [Rockwell Collins]...is whether the public display of the Gay Pride flag by the company means that...[Rockwell Collins]...is not welcoming to people who do not share the agenda that the flag undeniably represents."

37.     Tolle's e-mail on or around July 17, 2019, also indicates that the unwelcome and hostile work environment caused by the display of the Gay Pride flag was creating an environment where a person with Tolle's religious beliefs could not continue to work: "...I am left with the feeling that...[Rockwell Collins]...is not a place where a Christian who does not support Gay Pride should work."

38.     Tolle's e-mail on or around July 17, 2019, demonstrates Tolle's effort to take advantage of Rockwell Collins' Human Resources channels to obtain preventive or corrective action to redress the harassing behavior, or to obtain a reasonable accommodation of his religious beliefs and practices which were impacted by Rockwell Collins' discriminatory behavior or the offensive conduct or object.

39.     On or around July 18, 2019, the Human Resources representative for Rockwell Collins sent Tolle an e-mail response to his complaint and questions.  The Human Resources

11

response confirmed that all locations flew the Gay Pride flag:   "I can tell you at legacy...
[Rockwell Collins], to my knowledge all the locations that have flagpoles flew the flag."  The
Human Resources response could not confirm whether it would be done 30 days of every year,
but the Human Resources response did not offer Tolle any accommodation based on his religious
belief or practice at another location as Tolle had requested or any other reasonable
accommodation.

40.     On or around July 18, 2019, the Human Resources representative gave Tolle a
copy of the United Technologies Corporation "Rainbow Flag FAQ's" document (hereinafter
"UTC FAQ document").  This document included the following:

a)  The UTC FAQ document stated that the flag "reaffirms [Rockwell Collins]...
commitment to attracting and engaging talented people...."

b)  The UTC FAQ document appeared to be promulgated in or around 2018, stating
"This year, we are proud to celebrate and recognize the beginning of PRIDE month by
displaying the flag during the first week and will evaluate whether that timeline is the right
timeline for the next year before June 2019."

c)  Not all locations of UTC or Rockwell Collins were designated to fly the Gay Pride
flag in or around 2018: "The flag will fly at P&W and Collins HQ for the first week in June, and
for the entire month of June at UTC HQ in Farmington, CT."

d)  The actions of Rockwell Collins to fly the Gay Pride flag at all locations and for 30
days starting in or around 2019 was a marked departure from past practices and even from those
in or around 2018 according to the UTC FAQ document.

e)  According to the UTC FAQ document, the only other minority flag flown was the
Prisoner of War (POW) flag, which is only flown at a single location on isolated days during the
year.  According to the UTC FAQ document, no other minority was permitted to fly a flag at that

time.

f)  The UTC FAQ document made it clear that it was company policy to favor the Gay Pride movement by stating:  "The company leadership is fully supportive of the effort to recognize PRIDE month as we believe it reflects many of our company's values…."  Noteworthy is that the document did not make any attempt to express such wholehearted support for any other minority.

41.  The Rockwell Collins' Human Resources response on or around July 18, 2019, responded to his question about potential retaliation based on his religious objection to the Gay Pride flag with the threat that Tolle's language could be considered bigoted and justify retaliation:  "If you use derogatory language to refer to someone due to their…sexual orientation…that is not tolerated."

42.  The Rockwell Collins Human Resources response on or around July 18, 2019, contained no offer of accommodation of Tolle's religious belief or practice and made no claim that an accommodation of Tolle's religious belief or practice would create an undue hardship for Rockwell Collins.

43.  The Rockwell Collins Human Resources response on or around July 18, 2019, contained no language demonstrating that Rockwell Collins had exercised or would exercise reasonable care to prevent and promptly correct any of the harassing behavior.

44.  On or around July 18, 2019, Tolle responded to the Human Resources representative by e-mail, including his continuing concerns about the unfair and hostile work place caused by the Rockwell Collins actions and policies regarding display of the Gay Pride flag.  Specifically, Tolle's e-mail response stated:

a)  "The other concern I have is in how the response I received to my concerns about retaliation have really only underscored my concerns.…The response I received to my question

about whether I would face any such adverse treatment if I voiced my opposition to the Gay Pride movement seemed to automatically assume that my opposition would be derogatory towards homosexuals.  This first response underscores my concerns that a person who shares my religious convictions and opinions which do not support the Gay Pride agenda will normally be treated as a homophobe or bigot within the company."

b) "For these reasons, I am still concerned that...[Rockwell Collins]...is a workplace which will not welcome people with my religious beliefs....Without any further information, I will continue to consider...[Rockwell Collins]...as a place where Christians are not as welcome as others...."

45.     On or around July 23, 2019, the Rockwell Collins legal Counsel's office responded to Tolle's complaints and questions through an e-mail from Rockwell Collins' Attorney Michael Wade (hereinafter, "Wade's e-mail"). Wade's e-mail response did not address the details of Tolle's complaint of an unfair and hostile work place based on religious discrimination and Wade's e-mail did not offer Tolle any accommodation for his religious belief or practice as Tolle had requested.  It is noteworthy that Wade's e-mail made no claim that an accommodation of Tolle's religious belief or practice would create an undue hardship for Rockwell Collins.

46.     Wade's e-mail did respond to Tolle's concern that Rockwell Collins' response to Tolle's complaints were threatening retaliation by repeating the similarly threatening language: "Thus, while individuals who work for...[Rockwell Collins]...are free to their own personal, political, or religious views, doctrine, membership, etc., we expect employees to take care to communicate with co-workers in a respectful, professional, and non-discriminatory or harassing manner....Any employee who treats another in a way that contradicts this expectation will subject him or herself to discipline, up to and including termination."

47.     Rockwell Collins' Attorney Wade's e-mail on or around July 23, 2019, contained no language demonstrating that Rockwell Collins had exercised or would exercise reasonable care to prevent and promptly correct any of the harassing behavior.  Wade's e-mail did indicate that Rockwell Collins would not be willing to exercise any reasonable care to prevent or correct any harassment caused by the flying of the Gay Pride flag in the future by expressing the company's past commitment to this action with the following statement: "We were recently proud to support employees who are members of the LGBTQ+ community during Pride Month".

48.     Wade's e-mail included language which reflected a bias in Rockwell Collins policies which was markedly in favor of Gay Pride while unwilling to show public support for any other minority point of view, adding the following statement after Wade's glowing comments about the LGBTQ+ community:  "...the Company does not sponsor  or support any particular religious or political viewpoint, practice or membership to the exclusion of others".

49.     On or around August 1, 2019, Mechiche-Alami told Tolle to contact engineering manager Jay Dabhade concerning an offer to become a regular employee for Rockwell Collins. Dabhade told Tolle on or around August 2, 2019, that Rockwell Collins wanted Tolle to join the RCCT team as a regular employee and by an e-mail on or around August 2, 2019, Dabhade told Tolle that he could apply for a position after Dabhade opened a software engineering requisition.

50.     On or around August 21, 2019, Tolle was able to apply to the Rockwell Collins online job announcement for the software engineering position with RCCT as a regular employee. On or around August 29, 2019, the Rockwell Collins recruiter sent Tolle an offer letter by e-mail.

51.     The offer letter on or around August 29, 2019, contained no information which would address Tolle's complaints of an unfair and hostile work environment caused by Rockwell Collins actions and policies regarding the display of an object which Tolle found offensive based

on his religious belief or practice.  Specifically, the offer letter contained no offer to address Tolle's complaints or to offer Tolle any accommodation of his religious belief or practices, nor did it claim that an accommodation of Tolle's religious belief or practice would create an undue hardship on Rockwell Collins. Furthermore, the offer letter on or around August 29, 2019, contained no language to indicate that Rockwell Collins had exercised or would be willing to exercise reasonable care to prevent and promptly correct any harassing behavior caused by their actions or offensive conduct or object.

52.     On or around September 3, 2019, Tolle informed Rockwell Collins that he "cannot continue" working at Rockwell Collins and told Rockwell Collins management that he had to turn down the offer of employment for the following reasons:

a)  "For a whole month of the current year, Collins Aerospace management chose to fly a flag over our location which, to me, is an offensive object which represents a social movement that has been known for retaliatory and discriminatory practices against Christians who hold my religious convictions.  With the many examples of this over the past years, I believe that flying the Gay Pride flag over the company will be enough so that a reasonable person would consider such a pervasive action to create an intimidating or hostile workplace for persons like me."

b)  "Additionally, my religious practices do not allow me to work under a Gay Pride flag and for me to continue working as an employee at Collins, it would require me to change my religious practices and to endure the display of an offensive object as a condition of my employment."

c)  "I raised my concerns with management and HR representatives, requesting both clarification of the policy and accommodation of my religious practices.  Unfortunately, the responses I received from HR and the legal counsel failed to offer any accommodation of my religious practices, at any location in the company."

16

d) Tolle also raised his concerns about threats in response to the raising of his concern about retaliation: "Unfortunately, the responses I received from HR and the legal counsel...even contributed to some of my concerns."

53.     Tolle's e-mail on or around September 3, 2019, demonstrates that the past harassing behavior at Rockwell Collins and prospect of continuing harassing behavior by flying an object Tolle found offensive due to religious reasons over all locations of the company for 30 days every year in the future was sufficiently severe or pervasive to alter the condition of Tolle's employment.  Tolle made it clear in his e-mail on or around September 3, 2019, that the abusive working environment due to this harassment had become so intolerable at the time or that the prospect of harassment in the future had become so intolerable that Tolle believed his resignation was his only option for getting relief from the harassment and Tolle's only fitting response.

54.     On or around September 17, 2019, Tolle gave notice to his Rockwell Collins' project lead and Mr. Amine Mechiche-Alami, his supervisor, that his last day of work at Rockwell Collins would be October 4, 2019.

55.     On or around October 4, 2019, Tolle stopped working at Rockwell Collins because of a constructive discharge caused by the following:

a) Unwelcome conduct and/or display of offensive object which was severe and/or pervasive enough to create a work environment that a reasonable person would consider intimidating and/or hostile and/or interfered with Tolle's work based on his religious belief and practice.

b) Discriminatory, unfair and/or hostile work place and/or hiring practices which caused Tolle to believe that Tolle had to abandon or alter his religious belief or practice in order to continue working at the company.

c) Discrimination against Tolle based on religion because Rockwell Collins failed to

17

offer Tolle any accommodation of his religious belief or practice which prevented him from continuing to work at the company.

d) Threats of retaliation in response to Tolle's complaints about being threatened with retaliation after complaining about an intimidating or hostile work place due to discrimination based on his religious belief or practice.

56. On or around September 28, 2019, Tolle sent a letter by certified U. S. Mail to the U. S. Equal Employment Opportunity Commission (hereinafter "EEOC"), which reported the discriminatory policy and actions against him by Rockwell Collins, doing business as Collins Aerospace, located at 22640 Davis Drive, Sterling, VA 20164, as follows:

57. On or around November 16, 2019, Tolle filed a complaint of formal charges (EEOC Form 5) by certified U. S. Mail with the EEOC, which reported discriminatory policies and actions by Rockwell Collins against Tolle as follows:

a) "[Rockwell Collins]...management forced me to endure offensive conduct or object which was serious and pervasive enough for a reasonable person to find it to be intimidating, hostile or an interference to work for me due to my religious beliefs and practices."

b) "[Rockwell Collins]...management's response to my complaints about the offensive conduct or object included threats of retaliation against me which were unnecessary, inappropriate and violated my rights under the law."

c) "[Rockwell Collins]...management's actions caused me to believe that I had to abandon or adjust my religious beliefs or practice in order to continue working at the company and this led to my constructive discharge from the company."

d) "[Rockwell Collins]...management's discriminatory actions against Christians who do not support the Gay Pride flag or its movement due to religious reasons creates an environment which is unwelcoming to Christians and has a disparate impact on Christians who work at or

18

apply to the company."

58.     On or around December 4, 2019, the EEOC sent Tolle a response to Tolle's charges which stated:  "Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.   This does not certify that the respondent is in compliance with the statutes.   No finding is made as to any other issues that might be construed as having been raised by this charge."

59.     On or around December 4, 2019, the EEOC letter notification to Tolle stated *"This information relates to filing suit in Federal...court....*In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you** *receive* **this Notice**."  (See Exhibit A.)

60.     On or around January 9, 2020, Tolle corrected his complaint to clarify his status as a statutory employee and provided the amended complaint to the EEOC.

61.     On or around February 11, 2020, the EEOC informed Tolle that his amended complaint would be used to request reconsideration of Tolle's complaint by the EEOC. (See Exhibit B.)

62.     On or around February 13, 2020, the EEOC informed Tolle that they had reviewed his amended complaint and had decided not to change its finding of December, 2019.


<u>CAUSES OF ACTION</u>

<u>AS AND FOR A FIRST CAUSE OF ACTION</u>

63.     Tolle re-alleges and incorporates the above allegations of this complaint as if set forth fully herein.

64.     The Civil Rights Act under 42 U.S.C. § 2000e-2(a)(1) prohibits discrimination against any individual with respect to his conditions or privileges of employment, because of

such individual's religion.

65.     According to the Equal Employment Opportunity Commission's website, harassment is a form of employment discrimination that violates Title VII of the Civil Rights Act of 1964, which is unwelcome conduct that is based on religion where 1) enduring the offensive conduct becomes a condition of continued employment, or 2) the conduct is severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile or abusive.   Offensive conduct may include offensive objects and interference with work performance.[1]

66.     This First Cause of Action relates to unwelcome conduct or object and/or interference of work performance that is based on religion where "2) the conduct is severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile or abusive".

67.     In *Harris v. Forklift Systems, Inc.*, 510 U. S. 17 (1993), the Supreme Court defined the standard for hostile work environments under the Civil Rights Act:  "This standard requires an objectively hostile or abusive environment–one that a reasonable person would find hostile or abusive–as well as the victim's subjective perception...."[2] and "A discriminatorily abusive work environment, even one that does not seriously affect employees' psychological well-being, can and often will detract from employees' job performance, [or] discourage employees from remaining on the job...."[3]  But Justice Scalia's concurring opinion underscores that the work product does not actually have to be affected:  "...the test is not whether work has been impaired, but whether working conditions have been discriminatorily altered."[4]

68.     Upon information and belief, the Rockwell Collins introduction of a radical policy

---

1   See  EEOC web page on harassment at https://www.eeoc.gov/laws/type/harassment.cfm
2   *Harris v. Forklift Systems, Inc.*, 510 U. S. 17, 17 (1993)
3   *Harris v. Forklift Systems, Inc.*, 510 U. S. 17, 22 (1993)
4   *Harris v. Forklift Systems, Inc.*, 510 U. S. 17, 25 (1993)

to fly the Gay Pride flag for a whole month over all of its locations without any accommodation of those with religious objections was a marked departure from its past actions while Tolle was employed there and is quite different than what is found in the rest of the aerospace industry. This is substantiated by the facts, including but not limited to the following:

a) The UTC FAQ document on the company policy of flying the Gay Pride flag indicated that this was a new and marked departure from past practices even for UTC and Rockwell Collins;

b) Tolle, who had worked for approximately 20 years with the aerospace and defense industries, had never seen the Gay Pride flag flown in this manner at any other company in the past;

c) Tolle had never seen the Gay Pride flag flown at Rockwell Collins locations before, including at the two locations where he had worked in Warrenton or in Sterling.

69.     Upon information and belief, Rockwell Collins flying of the Gay Pride flag, an object which Tolle found offensive due to religious reasons, for 30 days in or around June, 2019, at all locations of the company was sufficiently severe and pervasive enough to create a work environment which a reasonable person would consider intimidating, hostile or abusive.  This is substantiated by the facts, including but not limited to the following:

a) Tolle told his supervisor Mechiche-Alami that he found the Gay Pride flag offensive, including in his e-mail on or around June 27, 2019: "…I will probably go home to work offsite as I still don't feel comfortable working under a flag which I find offensive for religious reasons";

b) The UTC FAQ document on the company policy of flying the Gay Pride flag indicated that this was a new and marked departure from past practices even for UTC and Rockwell Collins;

c) Tolle had never seen the Gay Pride flag flown at Rockwell Collins locations before,

including at the two locations where he had worked in Warrenton or in Sterling.

d)  Tolle's communication with management on or around June 27, 2019, showed that he found the work environment which displayed this offensive symbol as intimidating, hostile or abusive and interfering with his work: "...I will probably go home to work offsite as I still don't feel comfortable working under a flag which I find offensive for religious reasons."

e)  Tolle's e-mail on or around September 3, 2019, stated that Tolle believed that the offensive conduct or object displayed by Rockwell Collins created a hostile workplace:  "...I believe that flying the Gay Pride flag over the company will be enough so that a reasonable person would consider such a pervasive action to create an intimidating or hostile workplace for persons like me."

70.    Upon information and belief, Rockwell Collins' communications with Tolle failed to indicate that the company would be willing to exercise any reasonable care to prevent or promptly correct any harassing action in the future or rule out the possibility that the company would continue the actions or flying of the object which Tolle found offensive due to religious reasons in the future so that there was no reason for Tolle to believe that the harassing environment would end.   Upon information and belief, the flying of the Gay Pride flag as a symbol of the company's support of the Gay Pride movement for many days in 2019 and the likelihood that the company policy which promoted this conduct or action will not change for any year in the future created an action by the company which was severe and pervasive to create a work environment that a reasonable person would consider intimidating, hostile or abusive. This is substantiated by the facts, including but not limited to the following:

a)  None of Tolle's managers told him that the display of the offensive conduct or object would be corrected or not repeated in the future;

b)  None of Rockwell Collins' responses to Tolle's complaints about the flying of the

Gay Pride flag said that this action would be corrected or not repeated in the future;

c)  The statement by Rockwell Collins' Attorney Wade showed no regret or interest in making any corrections to the company's actions and expressed pride in the past action so that it was probable that Rockwell Collins would continue the actions or flying of the object which Tolle found offensive due to religious reasons in the future.: "We were recently proud to support employees who are members of the LGBTQ+ community during Pride Month".

d)  Tolle's e-mail communications with Rockwell Collins on or around September 3, 2019, showed that the Rockwell Collins responses did not offer any prospect of change in the company's actions or policy in the future: "Unfortunately, the responses I received from HR and the legal counsel failed to offer any accommodation of my religious practices, at any location in the company."

e)  Tolle's e-mail communications with Rockwell Collins on or around September 3, 2019, showed that he believed that the continuing actions and policies at Rockwell Collins created an intimidating, hostile or abusive work environment based on his religious belief or practice:  "...I believe that flying the Gay Pride flag over the company will be enough so that a reasonable person would consider such a pervasive action to create an intimidating or hostile workplace for persons like me."

71.    Upon information and belief, the Rockwell Collins display of the Gay Pride flag was expanded in a radical way in 2019 which was considerably more severe and pervasive, so that every location of Rockwell Collins displayed the object which Tolle found offensive due to religious beliefs.  Upon information and belief, by taking the radical step to increase the number of days that the Gay Pride flag would be displayed and the number of locations such that the flag would be displayed at every location of the company, the conduct or action of the company became so severe and pervasive to create a work environment that a reasonable person would

23

consider intimidating, hostile or abusive.  This is substantiated by the facts, including but not limited to the following:

a)  The UTC FAQ document on the company policy of flying the Gay Pride flag indicated that this was a new and marked departure from past practices even for UTC and Rockwell Collins;

b)  The Human Resources response on or around July 18, 2019, confirmed that the Gay Pride flag was being flown at every Rockwell Collins location:  "I can tell you at legacy... [Rockwell Collins], to my knowledge all the locations that have flagpoles flew the flag."

c)  The display of this object at every location made it impossible for someone who found the object intimidating or offensive to continue to work at Rockwell Collins without being exposed to the object.

d)  Tolle's communication with management on or around June 27, 2019, showed that he found the work environment which displayed this offensive symbol as intimidating, hostile or abusive and interfering with his work:  "...I will probably go home to work offsite as I still don't feel comfortable working under a flag which I find offensive for religious reasons."

e)  Tolle's e-mail communications with Rockwell Collins on or around September 3, 2019, which followed Rockwell Collins' responses to his complaints showed that he believed that the continuing actions and policies at Rockwell Collins created an intimidating, hostile or abusive work environment based on his religious belief or practice:  "...I believe that flying the Gay Pride flag over the company will be enough so that a reasonable person would consider such a pervasive action to create an intimidating or hostile workplace for persons like me."

72.     Upon information and belief, Tolle's communications with Rockwell Collins management made it clear that the display of the Gay Pride flag was conduct which he found unwelcome in the work place.  Tolle told management that he supported policies which were

neutral to homosexuals in the work place.  Upon information and belief, Tolle made it clear that the preference of the company to display the Gay Pride flag was not a neutral policy and made the work place unwelcoming to persons like Tolle who found this object offensive due to their religious beliefs.  This is substantiated by the facts, including but not limited to the following:

a)  Tolle reported to his supervisor Mechiche-Alami and Brewer that he found the flying of the Gay Pride flag unwelcome based on his religious belief and practice;

b)  Tolle's e-mail to his supervisor on or around June 27, 2019, showed that the actions by Rockwell Collins was unwelcome and interfering with his work:  "...I will probably go home to work offsite as I still don't feel comfortable working under a flag which I find offensive for religious reasons."

c)  Tolle's complaints to his supervisors and in his subsequent e-mail on or around July 17, 2019, stated that he found Rockwell Collins' actions biased and non-neutral:  "I view this flag as something which is not neutral, but something which promotes one minority's viewpoint about pride in homosexual lifestyles and treats other minority viewpoint's [*sic.*] who don't agree with them as bigots."

73.     Upon information and belief, Tolle's communication with Rockwell Collins management and their representatives made it clear that he did not support the Gay Pride flag or the Gay Pride movement due to his religious beliefs and practice.  Upon information and belief, although Tolle made it known to the company that Tolle could support their equal opportunity policies which are neutral to sexual orientation in the work place, Tolle complained to management that the severe and pervasive nature of displaying the non-neutral symbol of the Gay Pride flag was offensive based on Tolle's religious beliefs and practice and such conduct created an intimidating and/or hostile work environment where it would be difficult for Tolle to continue to work.  This is substantiated by the facts, including but not limited to the following:

25

information and belief, Tolle's activities in his Church and outside of work based on these beliefs reflect a sincere religious belief which leads him to view the actions of Rockwell Collins as

26

a) Tolle reported to his supervisor Mechiche-Alami and Brewer that he found the flying of the Gay Pride flag unwelcome based on his religious belief and practice;

b) Tolle's e-mail to his supervisor on or around June 27, 2019, showed that the actions by Rockwell Collins was unwelcome and interfering with his work: "...I will probably go home to work offsite as I still don't feel comfortable working under a flag which I find offensive for religious reasons."

c) Tolle's complaints to his supervisors and in his subsequent e-mail on or around July 17, 2019, stated that he found Rockwell Collins' actions biased and non-neutral: "I view this flag as something which is not neutral, but something which promotes one minority's viewpoint about pride in homosexual lifestyles and treats other minority viewpoint's [*sic.*] who don't agree with them as bigots."

d) Tolle's e-mail on or around September 3, 2019 reported to Rockwell Collins management that he could not work at Rockwell Collins due to the continuing policy and actions of Rockwell Collins which Tolle found biased, non-neutral and offensive due to religious reasons: "For a whole month of the current year, Collins Aerospace management chose to fly a flag over our location which, to me, is an offensive object which represents a social movement that has been known for retaliatory and discriminatory practices against Christians who hold my religious convictions. With the many examples of this over the past years, I believe that flying the Gay Pride flag over the company will be enough so that a reasonable person would consider such a pervasive action to create an intimidating or hostile workplace for persons like me."

74.    Upon information and belief, Tolle has a long-held view based on his Catholic religion that does not support the promotion of Gay Pride or the homosexual lifestyle. Upon information and belief, Tolle's activities in his Church and outside of work based on these beliefs reflect a sincere religious belief which leads him to view the actions of Rockwell Collins as

promotion of something which is offensive to Tolle's religious beliefs and practices.  This is substantiated by the facts, including but not limited to the following:

a)  Tolle is a practicing Catholic who regularly participates in services at the Holy Trinity parish in Gainesville, Virginia;

b)  Tolle indicated to his supervisor Mechiche-Alami and Brewer that he found the flying of the Gay Pride flag offensive based on his religious belief and practice;

c)  Tolle's e-mail to his supervisor on or around June 27, 2019, showed that the actions by Rockwell Collins was offensive based on his religious belief or practice:  "...I will probably go home to work offsite as I still don't feel comfortable working under a flag which I find offensive for religious reasons."

d)  Tolle's e-mail on or around July 17, 2019, shows he does not support the promotion of Gay Pride based on his religious belief or practice:  "...as someone who has religious convictions which do not make me proud of Homosexuality or support the Gay Pride agenda...."

75.     Upon information and belief, there is considerable evidence from history that the Gay Pride movement is not a non-violent movement committed to peace and that the Gay Pride flag is not a symbol of peace.[5]  Upon information and belief, in recent years, there are ample

---

5   Famous examples of discrimination by the Gay pride community against persons in the work place who do not support the Gay pride movement include Jaelene Hinkle (https://www.washingtontimes.com/news/2019/jul/10/jaelene-hinkles-world-cup-snub-sparks-debate/), Patricia Jannuzzi (https://www.mycentraljersey.com/story/news/local/somerset-county/2015/04/10/patricia-jannuzzi-gets-job-back-immaculata-high-school/25587809/); Fr. Mark Morris (https://www.intoleranceagainstchristians.eu/index.php?id=12&case=2512); Brendan Eich (https://www.reuters.com/article/us-mozilla-ceo-resignation/mozilla-ceo-resigns-opposition-to-gay-marriage-drew-fre-idUSBREA321Y320140403); and Adolfo Martinez (https://desmoinesregiter.com/story/news/crime-and-courts/2019/12/19/lgbtq-flag-burning-iowa-man-sentenced-church-banner-fire/2697139001/).  According to Chuck Fimandri, chief counsel to the Freedom of Conscience Defense Fund, many Christians who oppose the Gay pride movement have been targeted in the workplace: "They have a mortgage to pay and kids to feed, so they give in and shut up," Fimandri said. "Others quit and try to get another job. Or they get fired and end up on social services. There are thousands and thousands of them across the country. They have said something or donated to something or declined to say

examples of how the Gay Pride movement has led to retaliation and discrimination against people who hold Tolle's religious convictions and the Gay Pride flag has become a symbol of the movement and this discriminatory behavior towards Christians to many people.[6]  For these reasons, Tolle views the display of the Gay Pride flag by Rockwell Collins management as offensive to Tolle's religious beliefs, but also is a symbol which represents a movement that is discriminatory and hateful to Christians like Tolle.   Upon information and belief, even if Rockwell Collins management does not explicitly approve of the discriminatory practices of the Gay Pride movement against Christians, the display of the symbol of this movement concerned Tolle greatly because it serves to give tacit approval to all of the discrimination and abuse of Christians who do not support Gay Pride due to religious convictions.   In addition to the examples and evidence provided in the footnotes, this is further substantiated by the facts, including but not limited to the following:

a) Tolle's e-mail complaint on or around July 17, 2019, stated his concerns about the discriminatory agenda which the Gay Pride flag represents:  "The concerns I have about applying for a job with...[Rockwell Collins]...is whether the public display of the Gay Pride flag by the company means that...[Rockwell Collins]...is not welcoming to people who do not share the agenda that the flag undeniably represents."

b) Tolle's e-mail on or around September 3, 2019 shows that the Gay Pride flag was a symbol which contributed to a intimidating or hostile workplace:   "For a whole month of the

---

something positive about same-sex 'marriage' and have become pariahs in their places of employment." (quoted in the National Catholic Register, "It's Not a Gay Old Time for Those Who Support Traditional Marriage", April 7, 2015)

6   Gilbert Baker's own comments about the creation of the Gay pride flag was about power and a revolution, which shows the intent from the very beginning was not to create an symbol of peace and inclusion: "As a community, both local and international, gay people were in the midst of an upheaval, a battle for equal rights, a shift in status where we were now demanding power, taking it. This was our new revolution: a tribal, individualistic, and collective vision. It deserved a new symbol." (excerpts from Gilbert Baker's memoir at https://gilbertbaker.com/rainbow-flag-origin-story/)

current year, Collins Aerospace management chose to fly a flag over our location which, to me, is an offensive object which represents a social movement that has been known for retaliatory and discriminatory practices against Christians who hold my religious convictions.  With the many examples of this over the past years, I believe that flying the Gay Pride flag over the company will be enough so that a reasonable person would consider such a pervasive action to create an intimidating or hostile workplace for persons like me."

76.     Upon information and belief, it is noteworthy that when Tolle raised Tolle's concerns about the symbol of discrimination that the Gay Pride flag represented and that Tolle viewed it as a sign that Catholics are not welcome at Rockwell Collins, Rockwell Collins management made no attempt to condemn or disavow the use of the Gay Pride flag to promote discrimination against Christians or to create an unwelcome environment for Christians which Tolle noted as one of his concerns in his complaints.  This is substantiated by the facts, including but not limited to the following:

a) Tolle's e-mail on or around July 17, 2019, stated that the Gay Pride flag is a non-neutral symbol promoting unequal treatment:  "I view this flag as something which is not neutral, but something which promotes one minority's viewpoint about pride in homosexual lifestyles and treats other minority viewpoint's [*sic.*] who don't agree with them as bigots."

b) Tolle's e-mail complaint on or around July 17, 2019, stated his concerns about the discriminatory agenda which the Gay Pride flag represents:  "The concerns I have about applying for a job with...[Rockwell Collins]...is whether the public display of the Gay Pride flag by the company means that...[Rockwell Collins]...is not welcoming to people who do not share the agenda that the flag undeniably represents."

c) Although Wade's e-mail states that Rockwell Collins' support of Gay Pride are intended to demonstrate a desire to create "a welcoming, safe and respectful environment for all

employees", none of Rockwell Collins' responses to Tolle's complaints included any other language which explicitly disavowed or condemned the use of the Gay Pride flag to intimidate Christians or create an unwelcoming environment for Christians.

77.     Upon information and belief, the repeated and pervasive display of a symbol or object, which Tolle views as a symbol of discrimination and hatred, by the company creates an environment which is unwelcome and intimidating to Tolle and Tolle's complaints to management made this clear.  This is substantiated by the facts, including but not limited to the following:

a)  Tolle's e-mail on or around July 17, 2019, stated that the Gay Pride flag is a non-neutral symbol promoting unequal treatment:  "I view this flag as something which is not neutral, but something which promotes one minority's viewpoint about pride in homosexual lifestyles and treats other minority viewpoint's [*sic.*] who don't agree with them as bigots."

b)  Tolle's e-mail complaint on or around July 17, 2019, stated his concerns about the discriminatory agenda which the Gay Pride flag represents:  "The concerns I have about applying for a job with...[Rockwell Collins]...is whether the public display of the Gay Pride flag by the company means that...[Rockwell Collins]...is not welcoming to people who do not share the agenda that the flag undeniably represents."

c)  Tolle's e-mail on or around September 3, 2019 reported to Rockwell Collins management that he could not work at Rockwell Collins due to the continuing policy and actions of Rockwell Collins which Tolle found discriminatory and unwelcoming towards Tolle and other Christians:  "For a whole month of the current year, Collins Aerospace management chose to fly a flag over our location which, to me, is an offensive object which represents a social movement that has been known for retaliatory and discriminatory practices against Christians who hold my religious convictions.  With the many examples of this over the past years, I believe that flying

30

the Gay Pride flag over the company will be enough so that a reasonable person would consider such a pervasive action to create an intimidating or hostile workplace for persons like me."

78.     Upon information and belief, the actions by Rockwell Collins against Tolle were intentional and were reckless, callous and/or indifferent to Tolle's civil rights, which is substantiated by the facts, including but not limited to the following:

a)  Rockwell Collins failed to show the same enthusiastic public support of any other minority symbol as it did for the Gay Pride flag, clearly showing a bias against minorities which do not support Gay Pride, which was noted by Tolle's e-mail on or around July 17, 2019: "For the almost 3 years I have worked with Rockwell Collins, I have never seen another minority flag flown over the company except this one [instance]....";

b)  Wade's e-mail clearly showed that it was Rockwell Collins' intention to promote the preferential treatment of LGBTQ employees during the flying of the Gay Pride flag: "We were recently proud to support employees who are members of the LGBTQ+ community during Pride Month";

c)  The failure of Rockwell Collins management to correct or prevent the harassing behavior towards Tolle following Tolle's complaints to them about the conduct or object which Tolle found offensive due to religious reasons and the intimidating, hostile or abusive work environment that such conduct created.

d)  The failure of Rockwell Collins to take any action in response to Tolle's complaints of violations of his civil rights was reckless, callous and/or indifferent to Tolle's federally protected rights.

*Claim related to First Cause of Action*

79.     **The display of the Gay Pride flag by Rockwell Collins is/was conduct which promotes an object which was unwelcome and offensive to Tolle based on his religious**

31

**beliefs and these actions by Rockwell Collins are/were sufficiently severe or pervasive enough to create an intimidating, hostile, or offensive work environment.  For these reasons, Rockwell Collins discriminated against Tolle and/or subjected him to a hostile work environment in violation of the Civil Rights Act.**

*Alternative Claim related to First Cause of Action*

80.     If the Court finds other reasons motivating these actions of Rockwell Collins against Tolle, the facts showing that Rockwell Collins' display of an object which was unwelcome and offensive to Tolle based on his religious beliefs and sufficiently severe or pervasive enough to create an intimidating, hostile, or offensive work environment were still based on bias against Tolle's religious belief or practice.  **In this case, by displaying conduct which promotes an object which was unwelcome and offensive to Tolle based on his religious beliefs and which were sufficiently severe or pervasive enough to create an intimidating, hostile, or offensive work environment, Rockwell Collins discriminated against Tolle and/or subjected Tolle to a hostile work environment in violation of the Civil Rights Act based on an unlawful employment practice under 42 U.S.C. § 2000e-2(m).**

81.     If the facts presented in this First Cause of Action are taken as true, it is probable that the actions of Rockwell Collins in displaying the Gay Pride flag for extended period of time at all locations and refusing to correct or prevent the conduct or object which Tolle's complaints made clear were offensive to him based on his subjective perception were sufficiently severe and pervasive enough to create an intimidating, hostile or abusive work environment to discriminate against Tolle and/or subject him to a hostile work environment in violation of the Civil Rights Act.  The facts show that Rockwell Collins displayed an object which Tolle subjectively found to be offensive based on his religious belief for an extended period of time at all locations of the company so that Tolle could not escape from it.  A reasonable person can find that an objectively

32

hostile or abusive environment exists when the facts show that offensive object was displayed so extensively throughout a business for such a long period of time and Rockwell Collins management made no effort to change this practice or to claim that it would not be repeated in the future.  The facts also show that Rockwell Collins' actions were not only unwelcome and offensive to Tolle due to his religious belief based on his subjective perception, but also discouraged Tolle from remaining on the job, when he told his supervisor that he had to leave his work location due to the display of the offensive object – sufficiently impacting Tolle's ability to perform at the work location – and that the actions by Rockwell Collins to display the offensive conduct or object were intentional. Failure to take action by Rockwell Collins showed that the their actions were intentional and that Rockwell Collins management was reckless, callous and/or indifferent to Tolle's federally protected rights.  Based on the fact that the pleaded factual content should allow the Court to draw a reasonable inference that Rockwell Collins' conduct has met all of the elements under the Supreme Court's standard for discrimination under the Civil Rights Act and that Rockwell Collins is therefore liable for discriminating against Tolle and/or creating a hostile work environment, the claims included within this First Cause of Action are based on non-conclusory statements of fact and are facially plausible.

*Additional Claims related to First Cause of Action*

82.     As a direct and proximate cause of the aforementioned actions of Rockwell Collins, Tolle has suffered injuries and damages, including but not limited to, loss of past and future earnings, loss of past and future benefits, damage to professional reputation, and undue pain and suffering to Tolle and his family.

83.     Such violations of the Civil Rights Act by Rockwell Collins were intentional and were reckless, callous and/or indifferent to Tolle's federally protected rights and for these reasons, Tolle requests an award of compensatory and/or punitive damages pursuant

**to 42 U.S.C. § 1981a(a)(1).**

84.    Tolle requests award of attorney's fees pursuant to 42 U.S.C. § 2000e-5(k).


## AS AND FOR A SECOND CAUSE OF ACTION

85.    Tolle re-alleges and incorporates the above allegations of this complaint as if set forth fully herein.

86.    The Civil Rights Act under 42 U.S.C. § 2000e-2(a)(1) prohibits discrimination against any individual with respect to his conditions or privileges of employment, because of such individual's religion.

87.    According to the Equal Employment Opportunity Commission's website   at https://www.eeoc.gov/laws/type/harassment.cfm, harassment is a form of   employment discrimination that violates Title VII of the Civil Rights Act of 1964, which is unwelcome conduct that is based on religion where 1) enduring the offensive conduct becomes a condition of continued employment, or 2) the conduct is severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile or abusive.  Offensive conduct may include offensive objects and interference with work performance.[7]

88.    This Second Cause of Action relates to unwelcome conduct or object and/or interference of work performance that is based on religion where "1) enduring the offensive conduct becomes a condition of continued employment".

89.    Upon information and belief, the Rockwell Collins introduction of a radical policy to fly the Gay Pride flag for a whole month over all of its locations without any accommodation of those with religious objections was a marked departure from its past actions while Tolle was employed there and is quite different than what is found in the rest of the aerospace industry.

---

7    See footnote 1.

This is substantiated by the facts, including but not limited to the following:

a)  The UTC FAQ document on the company policy of flying the Gay Pride flag indicated that this was a new and marked departure from past practices even for UTC and Rockwell Collins;

b)  Tolle, who had worked for approximately 20 years with the aerospace and defense industries, had never seen the Gay Pride flag flown in this manner at any other company in the past;

c)  Tolle had never seen the Gay Pride flag flown at Rockwell Collins locations before, including at the two locations where he had worked in Warrenton or in Sterling.

90.     Upon information and belief, Rockwell Collins flying of the Gay Pride flag, an object which Tolle found unwelcome and offensive due to religious reasons, for 30 days in or around June, 2019, at all locations of the company was sufficiently severe and pervasive enough to create a work environment which a reasonable person would consider intimidating, hostile or abusive.  This is substantiated by the facts, including but not limited to the following:

a)  Tolle reported to his supervisor Mechiche-Alami and Brewer that he found the flying of the Gay Pride flag unwelcome based on his religious belief and practice;

b)  Tolle told his supervisor Mechiche-Alami that he found the Gay Pride flag offensive, including in his e-mail on or around June 27, 2019: "...I will probably go home to work offsite as I still don't feel comfortable working under a flag which I find offensive for religious reasons";

c)  The UTC FAQ document on the company policy of flying the Gay Pride flag indicated that this was a new policy;

d)  The company had not flown the Gay Pride flag at any of the locations where Tolle worked for the past 3 years:  "For the almost 3 years I have worked with Rockwell Collins, I have never seen another minority flag flown over the company except this one [instance]....";

35

e) Tolle's communication with management on or around June 27, 2019, showed that he found the work environment which displayed this offensive symbol as intimidating, hostile or abusive and interfering with his work: "...I will probably go home to work offsite as I still don't feel comfortable working under a flag which I find offensive for religious reasons."

f) Tolle's e-mail communications with Rockwell Collins on or around September 3, 2019, which followed Rockwell Collins' responses to his complaints showed that he believed that the continuing actions and policies at Rockwell Collins created an intimidating, hostile or abusive work environment based on his religious belief or practice: "...I believe that flying the Gay Pride flag over the company will be enough so that a reasonable person would consider such a pervasive action to create an intimidating or hostile workplace for persons like me."

91.    Upon information and belief, Rockwell Collins' communications with Tolle failed to indicate that the company would be willing to exercise any reasonable care to prevent or promptly correct any harassing action in the future or rule out the possibility that the company would continue the actions or flying of the object which Tolle found offensive due to religious reasons in the future so that there was no reason for Tolle to believe that the harassing environment would end.  Upon information and belief, the flying of the Gay Pride flag as a symbol of the company's support of the Gay Pride movement for many days in 2019 and the likelihood that the company policy which promoted this conduct or action will not change for any year in the future created an action by the company which was severe and pervasive to create a work environment that a reasonable person would consider intimidating, hostile or abusive. This is substantiated by the facts, including but not limited to the following:

a) None of Tolle's managers told him that this would be corrected or not repeated in the future;

b) None of Rockwell Collins' responses to Tolle's complaints about the flying of the

Gay Pride flag said that this action would be corrected or not repeated in the future;

c) The statement by Rockwell Collins' Attorney Wade showed no regret or interest in making any corrections to the company's actions and expressed pride in the past action so that it was probable that Rockwell Collins would continue the actions or flying of the object which Tolle found offensive due to religious reasons in the future.: "We were recently proud to support employees who are members of the LGBTQ+ community during Pride Month";

d) Tolle's e-mail communications with Rockwell Collins on or around September 3, 2019, showed that the Rockwell Collins responses did not offer any prospect of change in the company's actions or policy in the future: "Unfortunately, the responses I received from HR and the legal counsel failed to offer any accommodation of my religious practices, at any location in the company";

e) Tolle's e-mail communications with Rockwell Collins on or around September 3, 2019, showed that he believed that the continuing actions and policies at Rockwell Collins created an intimidating, hostile or abusive work environment based on his religious belief or practice:  "I believe that flying the Gay Pride flag over the company will be enough so that a reasonable person would consider such a pervasive action to create an intimidating or hostile workplace for persons like me."

92.    Upon information and belief, Tolle's communications with Rockwell Collins management made it clear that the display of the Gay Pride flag was conduct which he found unwelcome in the work place.  Tolle told management that he supported policies which were neutral to homosexuals in the work place.  Upon information and belief, Tolle made it clear that the preference of the company to display the Gay Pride flag was not a neutral policy and made the work place unwelcoming to persons like Tolle who found this object offensive due to their religious beliefs.  This is substantiated by the facts, including but not limited to the following:

a)  Tolle reported to his supervisor Mechiche-Alami and Brewer that he found the flying of the Gay Pride flag unwelcome based on his religious belief and practice;

b)  Tolle's e-mail to his supervisor on or around June 27, 2019, showed that the actions by Rockwell Collins was unwelcome and interfering with his work: "...I will probably go home to work offsite as I still don't feel comfortable working under a flag which I find offensive for religious reasons";

c)  Tolle's complaints to his supervisors and in his subsequent e-mail on or around July 17, 2019, stated that he found Rockwell Collins' actions biased and non-neutral: "I view this flag as something which is not neutral, but something which promotes one minority's viewpoint about pride in homosexual lifestyles and treats other minority viewpoint's [*sic.*] who don't agree with them as bigots."

93.     Upon information and belief, Tolle's communication with Rockwell Collins management and their representatives made it clear that he did not support the Gay Pride flag or the Gay Pride movement due to his religious beliefs and practice.  Upon information and belief, although Tolle made it known to the company that Tolle could support their equal opportunity policies which are neutral to sexual orientation in the work place, Tolle complained to management that the severe and pervasive nature of displaying the non-neutral symbol of the Gay Pride flag was offensive based on Tolle's religious beliefs and practice and such conduct created an intimidating and/or hostile work environment where it would be difficult for Tolle to continue to work. This is substantiated by the facts, including but not limited to the following:

a)  Tolle reported to his supervisor Mechiche-Alami and Brewer that he found the flying of the Gay Pride flag unwelcome based on his religious belief and practice;

b)  Tolle's e-mail to his supervisor on or around June 27, 2019, showed that the actions by Rockwell Collins was unwelcome and interfering with his work: "...I will probably go home

to work offsite as I still don't feel comfortable working under a flag which I find offensive for religious reasons";

c) Tolle's complaints to his supervisors and in his subsequent e-mail on or around July 17, 2019, stated that he found Rockwell Collins' actions biased and non-neutral: "I view this flag as something which is not neutral, but something which promotes one minority's viewpoint about pride in homosexual lifestyles and treats other minority viewpoint's [*sic.*] who don't agree with them as bigots";

d) Tolle's e-mail on or around September 3, 2019 reported to Rockwell Collins management that he could not work at Rockwell Collins due to the continuing policy and actions of Rockwell Collins which Tolle found biased, non-neutral and offensive due to religious reasons:  "For a whole month of the current year, Collins Aerospace management chose to fly a flag over our location which, to me, is an offensive object which represents a social movement that has been known for retaliatory and discriminatory practices against Christians who hold my religious convictions.  With the many examples of this over the past years, I believe that flying the Gay Pride flag over the company will be enough so that a reasonable person would consider such a pervasive action to create an intimidating or hostile workplace for persons like me."

94.      Upon information and belief, Tolle has a long-held view based on his Catholic religion that does not support the promotion of Gay Pride or the homosexual lifestyle.  Upon information and belief, Tolle's activities in his Church and outside of work based on these beliefs reflect a sincere religious belief which leads him to view the actions of Rockwell Collins as displaying conduct or object which is offensive to Tolle's religious beliefs and practices.  This is substantiated by the facts, including but not limited to the following:

a)  Tolle is a practicing Catholic who regularly participates in services at the Holy Trinity parish in Gainesville, Virginia;

b)  Tolle indicated to his supervisor Mechiche-Alami and Brewer that he found the flying of the Gay Pride flag offensive based on his religious belief and practice;

c)  Tolle's e-mail to his supervisor on or around June 27, 2019, showed that the actions by Rockwell Collins was offensive based on his religious belief or practice:  "...I will probably go home to work offsite as I still don't feel comfortable working under a flag which I find offensive for religious reasons";

d)  Tolle's e-mail on or around July 17, 2019, shows he does not support the promotion of Gay Pride based on his religious belief or practice:  "...as someone who has religious convictions which do not make me proud of Homosexuality or support the Gay Pride agenda...."

95.     Upon information and belief, the responses to Tolle's complaints and questions by Rockwell Collins did not affirmatively rule out that Rockwell Collins would fly the Gay Pride flag for an extended time over the locations where Tolle worked in the future and it was reasonable for Tolle to believe that he would be subjected to the object which he found offensive due to religious reasons for substantial periods of time in the future. This is substantiated by the facts, including but not limited to the following:

a)  None of Tolle's managers told him that this would be not be repeated in the future;

b)  Tolle's e-mail on or around July 17, 2019, raised the question of whether Rockwell Collins will follow the same practice in displaying the Gay Pride flag for an extended time every year: "will I be required to support the flying of the Gay Pride flag every year and support the agenda it represents?"

c)  None of Rockwell Collins' responses to Tolle's complaints about the flying of the Gay Pride flag ruled out that this would be repeated in the future;

d)  The statement by Rockwell Collins' Attorney Wade showed no regret or interest in changing the policy or practice to display this in the future, expressing such pride in the past

40

action that it was probable that Rockwell Collins would continue the actions or flying of the object which Tolle found offensive due to religious reasons in the future.: "We were recently proud to support employees who are members of the LGBTQ+ community during Pride Month";

e) Tolle's e-mail communications with Rockwell Collins on or around September 3, 2019, showed that the Rockwell Collins responses did not offer any prospect of change in the company's actions or policy in the future: "Unfortunately, the responses I received from HR and the legal counsel failed to offer any accommodation of my religious practices, at any location in the company";

f) On or around September 3, 2019, Tolle decided he could not continue working at Rockwell Collins and told the Rockwell Collins management that based on the intimidating or hostile workplace created in the past and promising to subject Tolle to the object he found offensive due to religious reasons in the future: "I believe that flying the Gay Pride flag over the company will be enough so that a reasonable person would consider such a pervasive action to create an intimidating or hostile workplace for persons like me."

96.     Upon information and belief, Tolle requested a reasonable accommodation based on his religious belief which would correct the harassing action or prevent Tolle from being subjected to the intimidating or hostile work environment caused by the display of an object which Tolle found offensive due to his religious belief or practice. This is substantiated by the facts, including but not limited to the following:

a) Tolle met with his Rockwell Collins supervisor, Mechiche-Alami, on or around July 15, 2019, and complained to him about the display of conduct or an object which Tolle found offensive due to religious reasons. Tolle told Mechiche-Alami at this time that he would prefer to be able to work offsite or at another location where the offensive conduct or object was not being displayed as an accommodation of his religious beliefs.

b)  On or around June 27, 2019, Tolle met with Rockwell Collins Engineering Manager Brewer, when Tolle complained to Brewer about the Gay Pride flag which was offensive to Tolle due to religious beliefs and asked Brewer if it would be possible to find a location where he could work as an accommodation of his religious beliefs and practices.

c)  Tolle's e-mail on or around July 17, 2019, also repeated Tolle's request for an accommodation of his religious beliefs and practices by finding another location where he could work without being exposed to the offensive object: "If the company is committed to flying the Gay Pride flag every year, are there locations within the company which will not have to work under this flag?"

97.     Upon information and belief, no response to Tolle's complaints or questions by Rockwell Collins included an offer of a reasonable accommodation of Tolle's religious belief or practice and Rockwell Collins never offered Tolle a reasonable accommodation which would correct the harassing action or prevent Tolle from being subjected to the intimidating or hostile work environment caused by the display of an object which Tolle found offensive due to his religious belief or practice.  This is substantiated by the facts, including but not limited to the following:

a)  No offer of a reasonable accommodation was made by Tolle's supervisor Mechiche-Alami;

b)  No offer of a reasonable accommodation as made during Tolle's complaints to Brewer;

c)  No offer of a reasonable accommodation was made by the Human Resources representative in her e-mail response on or around July 18, 2019 or any other communication by her;

d)  No offer of a reasonable accommodation was made within Wade's e-mail response on

42

or around July 23, 2019 or any other communication by Wade;

e) No other offer of a reasonable accommodation was communicated to Tolle by Rockwell Collins at any time after Tolle's complaint to Rockwell Collins.

98.    Upon information and belief, the display of the Gay Pride flag by Rockwell Collins at all locations in the future would force Tolle to endure unwelcome conduct or object which Tolle found offensive due to religious belief or practice as a condition of continued employment. This was substantiated by the facts, including but not limited to the following:

a) Tolle indicated to his supervisor Mechiche-Alami and Brewer that he found the flying of the Gay Pride flag offensive based on his religious belief and practice;

b) Tolle's e-mail to his supervisor on or around June 27, 2019, showed that the actions by Rockwell Collins was offensive based on his religious belief or practice: "...I will probably go home to work offsite as I still don't feel comfortable working under a flag which I find offensive for religious reasons";

c) Tolle's e-mail on or around September 3, 2019, stated: "For a whole month of the current year, Collins Aerospace management chose to fly a flag over our location which, to me, is an offensive object....";

d) None of the Rockwell Collins responses to Tolle's complaints indicated that the Rockwell Collins policies and actions concerning the flying of the Gay Pride flag would change and it was reasonable for Tolle to believe that he would be subjected to the display of the object which he found offensive due to his religious belief or practice in the future if he continued to work at Rockwell Collins.

99.    Upon information and belief, Tolle never received any offer of accommodation of Tolle's religious belief or practice from Rockwell Collins and without any offer of a reasonable accommodation of Tolle's religious belief or practice by Rockwell Collins, Tolle would be forced

to endure unwelcome conduct or object which Tolle found offensive due to religious belief or practice as a condition of continued employment. This was substantiated by the facts, including but not limited to the following:

a) Tolle indicated to his supervisor Mechiche-Alami and Brewer that he found the flying of the Gay Pride flag offensive based on his religious belief and practice;

b) Tolle's e-mail to his supervisor on or around June 27, 2019, showed that the actions by Rockwell Collins was offensive based on his religious belief or practice: "...I will probably go home to work offsite as I still don't feel comfortable working under a flag which I find offensive for religious reasons";

c) Tolle's e-mail on or around September 3, 2019, stated: "For a whole month of the current year, Collins Aerospace management chose to fly a flag over our location which, to me, is an offensive object....";

d) During Tolle's meetings with supervisor Mechiche-Alami and Brewer when Tolle complained about the display of the Gay Pride flag that he found offensive due to his religious belief or practice, Tolle asked if it would be possible for him to receive an accommodation for his religious belief by finding a location where the offensive object would not be displayed;

e) Tolle's e-mail on or around July 17, 2019, also repeated Tolle's request for an accommodation for his religious belief and practice by finding another location where he could work without being exposed to the offensive object: "If the company is committed to flying the Gay Pride flag every year, are there locations within the company which will not have to work under this flag?";

f) None of the Rockwell Collins responses to Tolle's complaints offered Tolle a reasonable accommodation for his religious belief or practice and it was reasonable for Tolle to believe that he would be subjected to the display of the object which he found offensive due to

his religious belief or practice in the future if he continued to work at Rockwell Collins.

100. Upon information and belief, Tolle believed that Rockwell Collins' display of unwelcome conduct or object which was offensive to Tolle based on religion required Tolle to endure offensive conduct as a condition of continued employment. This is substantiated by the facts, including by the statement in Tolle's e-mail on or around September 3, 2019: "it would require me to change my religious practices and to endure the display of an offensive object as a condition of my employment."

101. Upon information and belief, Tolle took advantage of several opportunities provided by Rockwell Collins to prevent or correct Rockwell Collins' conduct or object which Tolle found offensive due to religious reasons. This is substantiated by the facts, including but not limited to the following:

a) Tolle first took advantage of reporting his complaint to the supervisors in his operational chain of command, including Mechiche-Alami, and also Engineering Manager Brewer. Tolle told Mechiche-Alami that the Rockwell Collins conduct or object was so offensive to Tolle based on religious reasons that it interfered with his ability to work at the location where it was displayed, stating: "...I will probably go home to work offsite as I still don't feel comfortable working under a flag which I find offensive for religious reasons." Tolle told Brewer that Tolle found the flying of the Gay Pride flag offensive due to religious reasons and that if it was the policy for Rockwell Collins to fly this every year, this would create an offensive or hostile work environment under which Tolle could not continue to work.

b) Tolle also took advantage of the Rockwell Collins' Human Resource complaint process to report his complaints of the harassing nature of Rockwell Collins' actions by sending multiple e-mails to Rockwell Collins Human Resource representatives in or around July, 2019, attempting to pursue preventive or corrective options, including the following:

45

- "The concerns I have about applying for a job with...[Rockwell Collins]...is whether the public display of the Gay Pride flag by the company means that...[Rockwell Collins]...is not welcoming to people who do not share the agenda that the flag undeniably represents."

- "Without any more information, I am left with the feeling that...[Rockwell Collins]...is not a place where a Christian who does not support Gay Pride should work."

- "For these reasons, I am still concerned that...[Rockwell Collins]...is a workplace which will not welcome people with my religious beliefs....Without any further information, I will continue to consider... [Rockwell Collins]...as a place where Christians are not as welcome as others...."

102.     Upon information and belief, Rockwell Collins never exercised reasonable care to prevent or promptly correct the Rockwell Collins conduct or object which Tolle found offensive due to religious belief or practice.  This is substantiated by the facts, including but not limited to the following:

a)  None of Tolle's managers told him that this would be corrected or not repeated in the future;

b)  None of Rockwell Collins' responses to Tolle's complaints about the flying of the Gay Pride flag said that this action would be corrected or not repeated in the future;

c)  The statement by Rockwell Collins' Attorney Wade showed no regret or interest in making any corrections to the company's actions and expressed pride in the past action so that it was probable that Rockwell Collins would continue the actions or flying of the object which Tolle found offensive due to religious reasons in the future.: "We were recently proud to support

employees who are members of the LGBTQ+ community during Pride Month";

d) Tolle's e-mail communications with Rockwell Collins on or around September 3, 2019, showed that the Rockwell Collins responses did not offer any prospect of change in the company's actions or policy in the future: "Unfortunately, the responses I received from HR and the legal counsel failed to offer any accommodation of my religious practices, at any location in the company";

e) Tolle's e-mail communications with Rockwell Collins on or around September 3, 2019, showed that he believed that the continuing actions and policies at Rockwell Collins created an intimidating, hostile or abusive work environment based on his religious belief or practice: "I believe that flying the Gay Pride flag over the company will be enough so that a reasonable person would consider such a pervasive action to create an intimidating or hostile workplace for persons like me."

103.   Upon information and belief, the actions by Rockwell Collins against Tolle were intentional and were reckless, callous and/or indifferent to Tolle's civil rights, which is substantiated by the facts, including but not limited to the following:

a) Rockwell Collins failed to show the same enthusiastic public support of any other minority symbol as it did for the Gay Pride flag, clearly showing a bias against minorities which do not support Gay Pride, which was noted by Tolle's e-mail on or around July 17, 2019: "For the almost 3 years I have worked with Rockwell Collins, I have never seen another minority flag flown over the company except this one [instance]....";

b) Wade's e-mail clearly showed that it was Rockwell Collins' intention to promote the preferential treatment of LGBTQ employees during the flying of the Gay Pride flag: "We were recently proud to support employees who are members of the LGBTQ+ community during Pride Month";

47

c)  The failure of Rockwell Collins management to correct or prevent the harassing behavior following Tolle's complaints to them about the conduct or object which Tolle found offensive due to religious reasons and Rockwell Collins' failure to offer Tolle a reasonable accommodation which would allow Tolle not to have to endure the offensive conduct or object as a condition of employment.

d)  The failure of Rockwell Collins to take any action or to offer Tolle any accommodation in response to Tolle's complaints of violations of his civil rights was reckless, callous and/or indifferent to Tolle's federally protected rights.

*Claim related to Second Cause of Action*

104.    **For these reasons, the display of the Gay Pride flag by Rockwell Collins is/was conduct which displays an object which is/was unwelcome and offensive to Tolle based on his religious beliefs and Rockwell Collins actions and failure to offer Tolle any accommodation for Tolle's religious belief or practice caused or would cause Tolle to endure offensive conduct or object as a condition of continued employment; such actions of Rockwell Collins discriminated against Tolle and/or subjected him to a hostile work environment in violation of the Civil Rights Act.**

*Alternative Claim related to Second Cause of Action*

105.    If the Court finds other reasons motivating these actions of Rockwell Collins against Tolle, the facts showing that Rockwell Collins' display of an object which was unwelcome and offensive to Tolle based on his religious beliefs and Rockwell Collins actions and failure to offer Tolle any accommodation for Tolle's religious belief or practice caused or would cause Tolle to endure offensive conduct or object as a condition of continued employment were still based on bias against Tolle's religious belief or practice.  **In this case, by displaying the Gay Pride flag which was conduct or object unwelcome and offensive to Tolle based on**

48

**his religious beliefs, by failing to offer Tolle any accommodation for Tolle's religious belief or practice, and thus causing Tolle to endure offensive conduct or object as a condition of continued employment, Rockwell Collins discriminated against Tolle and/or subjected Tolle to a hostile work environment in violation of the Civil Rights Act based on an unlawful employment practice under 42 U.S.C. § 2000e-2(m).**

106.     Upon information and belief, the end of Tolle's work at Rockwell Collins was a constructive discharge, which is substantiated by the facts, including:

a)   The past harassing behavior at Rockwell Collins and prospect of continuing harassing behavior by flying an object Tolle found offensive due to religious reasons over all locations of the company for 30 days every year in the future was sufficiently severe or pervasive to alter the condition of Tolle's employment;

b)   Tolle tried to take advantage of the preventive or corrective opportunities offered by Rockwell Collins including reporting his complaint to his supervisors and also reporting his complaint separately to the Human Resources representative;

c)   Rockwell Collins did not exercise reasonable care to prevent or promptly address any of the harassing behavior;

d)   Based on Rockwell Collins' responses to his complaints, Tolle believed that the abusive working environment due to the harassment had become so intolerable or that the prospect of harassment in the future had become so intolerable that Tolle's resignation was his only option for getting relief from the harassment and Tolle's only fitting response.

*2nd Claim related to Second Cause of Action*

**107.     By discriminating against Tolle and/or subjecting Tolle to a hostile work environment in violation of the Civil Rights Act, Rockwell Collins' actions led to a constructive discharge of Tolle.**

*Alternative to 2ⁿᵈ Claim related to Second Cause of Action*

**108.   Upon information and belief, even if termination of Tolle's work with Rockwell Collins was not a constructive discharge, the display of the Gay Pride flag by Rockwell Collins is/was conduct which displays an object which was unwelcome and offensive to Tolle based on his religious belief and Rockwell Collins actions and failure to offer Tolle any accommodation for Tolle's religious belief or practice caused or would cause Tolle to endure offensive conduct or object as a condition of employment as a job applicant (both during the hiring process and if Tolle had accepted Rockwell Collins' employment offer). For these reasons, Rockwell Collins discriminated against Tolle during hiring and/or subjected him to a hostile work environment during hiring in violation of the Civil Rights Act.**

109.   If the facts presented in this Second Cause of Action are taken as true, it is probable that the actions of Rockwell Collins in displaying conduct or object, which Tolle's complaints made clear were unwelcome and offensive to him due to religious belief based on his subjective perception and which Rockwell Collins management refused to correct or prevent, or offer an accommodation for, caused Tolle to endure offensive conduct or object as a condition of employment in violation of the Civil Rights Act. The facts show that Rockwell Collins displayed an object which was unwelcome to Tolle and that Tolle subjectively found to be offensive based on his religious belief for an extended period of time at all locations of the company so that Tolle could not escape from it. The facts also show that Rockwell Collins management made no effort to change this practice or to claim that it would not be repeated in the future or to offer Tolle any accommodation which would relieve Tolle from being exposed to the offensive conduct or object. Furthermore, the facts show that these actions by Rockwell Collins were intentional and were reckless, callous and/or indifferent to Tolle's federally protected rights. Based on the fact

that the pleaded factual content should allow the Court to draw a reasonable inference that Rockwell Collins' conduct has met the EEOC's definition of harassment published under the EEOC's guidelines for religious discrimination under the Civil Rights Act and that Rockwell Collins is therefore liable for discriminating against Tolle and/or creating a hostile work environment, the claims included within this Second Cause of Action are based on non-conclusory statements of fact and are facially plausible. If claims included in this Second Cause of Action are found to be not valid on the basis of Tolle's standing as a statutory employee after Court review, the claims included in this Second Cause of Action related to Tolle as an applicant for employment are still valid and facially plausible.

*Additional Claims related to Second Cause of Action*

**110.    As a direct and proximate cause of the aforementioned actions of Rockwell Collins, Tolle has suffered injuries and damages, including but not limited to, constructive discharge, loss of past and future earnings, loss of past and future benefits, damage to professional reputation, and undue pain and suffering to Tolle and his family.**

**111.    Such violations of the Civil Rights Act by Rockwell Collins were intentional and were reckless, callous and/or indifferent to Tolle's federally protected rights and for these reasons, Tolle requests an award of compensatory and/or punitive damages pursuant to 42 U.S.C. § 1981a(a)(1).**

112.    Tolle requests award of attorney's fees pursuant to 42 U.S.C. § 2000e-5(k).


## AS AND FOR A THIRD CAUSE OF ACTION

113.    Tolle re-alleges and incorporates the above allegations of this complaint as if set forth fully herein.

114.    The Civil Rights Act under 42 U.S.C. § 2000e-2(a)(1) prohibits discrimination

against any individual with respect to his conditions or privileges of employment, because of such individual's religion.

115.     According to 29 CFR § 1605.2(b)(1), the "[Civil Rights Act] Section 701(j) makes it an unlawful employment practice under [Civil Rights Act] section 703(a)(1) for an employer to fail to reasonably accommodate the religious practices of an employee or prospective employee, unless the employer demonstrates that accommodation would result in undue hardship on the conduct of its business."

116.     Upon information and belief, Tolle's long held religious conviction made him observe the practice of not working under or being associated with the Gay Pride flag or being associated in any other way with the movement that the flag represented.  Tolle made this clear to Rockwell Collins management on several occasions after the Gay Pride flag was flown in or around June, 2019.  This is substantiated by the facts, including but not limited to the following:

a)  During his meetings with supervisor Mechiche-Alami and Brewer, Tolle told them that his religious practice did not allow him to be associated with the Gay Pride flag and that he would not be able to work under the flag due to his religious belief and practice;

b)  Tolle's e-mail to Mechiche-Alami on or around June 27, 2019, repeated his religious objection to working where the Gay Pride flag was being flown: "...I will probably go home to work offsite as I still don't feel comfortable working under a flag which I find offensive for religious reasons";

c)  Tolle's e-mail on or around September 3, 2019, stated:  "Additionally, my religious practices do not allow me to work under a Gay Pride flag...."

117.     Upon information and belief, in or around June 2019, Tolle met with his Rockwell Collins supervisor Mechiche-Alami and discussed the possibility of Rockwell Collins making an accommodation which would let Tolle work at a site where the Gay Pride flag was not displayed.

52

Tolle told Mechiche-Alami that he would prefer to be able to work offsite or at another location where this offensive object was not being displayed as an accommodation of his religious belief during this meeting

118. Upon information and belief, on or around June 27, 2019, Tolle met with Rockwell Collins Engineering Manager Brewer and discussed working at another location as an accommodation. Tolle asked Brewer at this time if it would be possible to find a location where he could work as an accommodation of his religious belief and practice.

119. Upon information and belief, Tolle's e-mail on or around July 17, 2019, also repeated Tolle's request for an accommodation of his religious belief and practices by finding another location where he could work without being exposed to the offensive object: "If the company is committed to flying the Gay Pride flag every year, are there locations within the company which will not have to work under this flag?"

120. Upon information and belief, no response to Tolle's complaints or questions by Rockwell Collins included an offer of a reasonable accommodation of Tolle's religious belief or practices. This is substantiated by the facts, including but not limited to the following:

a) No offer of a reasonable accommodation was made by Tolle's supervisor Mechiche-Alami;

b) No offer of a reasonable accommodation as made during Tolle's complaints to Brewer;

c) No offer of a reasonable accommodation was made by the Human Resources representative in her e-mail response on or around July 18, 2019 or any other communication by her;

d) No offer of a reasonable accommodation was made within Wade's e-mail response on or around July 23, 2019 or any other communication by Rockwell Collins Attorney Wade;

53

e) No other offer of a reasonable accommodation was communicated to Tolle by Rockwell Collins at any time after Tolle's complaint to Rockwell Collins.

121. Upon information and belief, Tolle believed that he had received no offer of reasonable accommodation of his religious belief or practices on or around September 3, 2019, when he notified Rockwell Collins management that he could not work at Rockwell Collins due to the display of the Gay Pride flag and turned down the employment offer given to him by Rockwell Collins. This is substantiated by the facts, including but not limited to the following:

a) On or around September 3, 2019, Tolle informed Rockwell Collins that he "cannot continue" working at Rockwell Collins and told the Rockwell Collins management that he had to turn down the offer of employment for reasons including " my religious practices do not allow me to work under a Gay Pride flag";

b) Tolle's communications on or around September 3, 2019, stated: "I raised my concerns with management and HR representatives, requesting both clarification of the policy and accommodation of my religious practices. Unfortunately, the responses I received from HR and the legal counsel failed to offer any accommodation of my religious practices, at any location in the company."

122. Rockwell Collins management responses to Tolle's request for accommodation also contained no demonstration that accommodating Tolle's religious practices would result in undue hardship on the conduct of Rockwell Collins' business. This is substantiated by the facts, including but not limited to the following:

a) No demonstration that any accommodation of Tolle's religious practices would result in undue hardship on the conduct of Rockwell Collins' business was provided by supervisor Mechiche-Alami or Brewer at any time after Tolle met with them about his complaint;

b) No demonstration that any accommodation of Tolle's religious practices would result

in undue hardship on the conduct of Rockwell Collins' business was provided by the Human Resources representative in her e-mail response on or around July 18, 2019 or any other communication by her;

c)  No demonstration that any accommodation of Tolle's religious practices would result in undue hardship on the conduct of Rockwell Collins' business was provided as part of Wade's e-mail response on or around July 23, 2019 or in any other communication by Rockwell Collins Attorney Wade;

d)  No demonstration that any accommodation of Tolle's religious practices would result in undue hardship on the conduct of Rockwell Collins' business was provided to Tolle by anyone associated with Rockwell Collins since his complaint about the Gay Pride flag.

123.    Upon information and belief, the actions by Rockwell Collins against Tolle were intentional and were reckless, callous and/or indifferent to Tolle's civil rights, which is substantiated by the facts, including but not limited to the following:

a)  Rockwell Collins failed to show the same enthusiastic public support of any other minority symbol as it did for the Gay Pride flag, clearly showing a bias against minorities which do not support Gay Pride, which was noted by Tolle's e-mail on or around July 17, 2019: "For the almost 3 years I have worked with Rockwell Collins, I have never seen another minority flag flown over the company except this one [instance]....";

b)  Wade's e-mail clearly showed that it was Rockwell Collins' intention to promote the preferential treatment of LGBTQ employees during the flying of the Gay Pride flag: "We were recently proud to support employees who are members of the LGBTQ+ community during Pride Month";

c)  The failure of Rockwell Collins management to correct or prevent the harassing behavior following Tolle's complaints to them about the conduct or object which Tolle found

55

offensive due to religious reasons and the failure of Rockwell Collins to reasonably accommodate the religious practices of Tolle or to demonstrate that an accommodation of Tolle's religious practices would result in undue hardship on the conduct of its business.

d) The failure of Rockwell Collins to take any action or to offer Tolle any accommodation in response to Tolle's complaints of violations of his civil rights was reckless, callous and/or indifferent to Tolle's federally protected rights.

*Claim related to Third Cause of Action*

**124.    For these reasons, Rockwell Collins failed to reasonably accommodate the religious practices of Tolle and Rockwell Collins failed to demonstrate that an accommodation of Tolle's religious practices would result in undue hardship on the conduct of its business.  By failing to offer any accommodation of Tolle's religious practices which prevented him from associating with or working under the Gay Pride flag and by failing to demonstrate any reason why such an accommodation would result in an undue hardship, Rockwell Collins discriminated against Tolle and/or subjected Tolle to a hostile work environment in violation of the Civil Rights Act.**

*Alternative Claim related to Third Cause of Action*

125.    If the Court finds other reasons motivating these actions of Rockwell Collins against Tolle, the facts showing that Rockwell Collins failed to reasonably accommodate the religious practices of Tolle without an undue hardship on the conduct of its business still demonstrated that Rockwell Collins did not take sufficient action to avoid liability for an unlawful employment practice which was biased against Tolle's religious belief or practice under 29 CFR § 1605.2(b)(1).  **In this case, by failing to offer any accommodation of Tolle's religious practices which prevented him from associating with or working under the Gay Pride flag and by failing to demonstrate any reason why such an accommodation would**

**result in an undue hardship, Rockwell Collins discriminated against Tolle and/or subjected Tolle to a hostile work environment in violation of the Civil Rights Act based on an unlawful employment practice under 42 U.S.C. § 2000e-2(m).**

126.     If the facts presented in this Third Cause of Action are taken as true, it is probable that the actions of Rockwell Collins in failing to reasonably accommodate the religious practices of Tolle as a statutory employee or as a prospective employee while failing to demonstrate that accommodation would result in undue hardship on the conduct of its business discriminated against Tolle and/or subjected Tolle to a hostile work environment in violation of the Civil Rights Act.  The facts show that Rockwell Collins displayed conduct or object which Tolle's religious practice did not allow him to work under and that Tolle reported to his supervisor that he could not work under the object which he found offensive due to his religious belief and practices. The facts also show that Tolle requested an accommodation of Tolle's religious practices at several times and that Rockwell Collins did not take any action which would reasonably accommodate Tolle's religious practices after Tolle's requests.  Furthermore, the facts show that Rockwell Collins failed to demonstrate that accommodation would result in undue hardship on the conduct of its business at any time after Tolle's complaints and that Rockwell Collins' actions were intentional and were reckless, callous and/or indifferent to Tolle's federally protected rights. Based on the fact that the pleaded factual content should allow the Court to draw a reasonable inference that Rockwell Collins' conduct has met the elements for religious discrimination under the Civil Rights Act by failing to offer Tolle a reasonable accommodation of his religious practices and that Rockwell Collins is therefore liable for discriminating against Tolle and/or creating a hostile work environment, the claims included within this Third Cause of Action are based on non-conclusory statements of fact and are facially plausible.

*Additional Claims related to Third Cause of Action*

**127.    As a direct and proximate cause of the aforementioned actions of Rockwell Collins, Tolle has suffered injuries and damages, including but not limited to, loss of past and future earnings, loss of past and future benefits, damage to professional reputation, and undue pain and suffering to Tolle and his family.**

**128.    Such violations of the Civil Rights Act by Rockwell Collins were intentional and were reckless, callous and/or indifferent to Tolle's federally protected rights and for these reasons, Tolle requests an award of compensatory and/or punitive damages pursuant to 42 U.S.C. § 1981a(a)(1).**

129.    Tolle requests award of attorney's fees pursuant to 42 U.S.C. § 2000e-5(k).

## AS AND FOR A FOURTH CAUSE OF ACTION

130.    Tolle re-alleges and incorporates the above allegations of this complaint as if set forth fully herein.

131.    The Civil Rights Act under 42 U.S.C. § 2000e-2(a)(1) prohibits discrimination against any individual with respect to his conditions or privileges of employment, because of such individual's religion.

132.    The EEOC Compliance Manual states: "Religious harassment in violation of Title VII occurs when employees are...required or coerced to abandon, alter or adopt a religious practice as a condition of employment...."[8]

133.    Upon information and belief, Tolle communicated to Rockwell Collins management that continuing to work at a location that flew a Gay Pride flag was contrary to his religious practice.  This is substantiated by the facts, including but not limited to the following:

a)    In or around June 2019, Tolle met with Rockwell Collins supervisor Mechiche-Alami

---

8    See EEOC Compliance Manual on religious discrimination at https://www.eeoc.gov/policy/docs/religion.html

and told him that continuing to work at a location that flew a Gay Pride flag was contrary to his religious practice, which did not allow him to participate in any activity which publicly associated him with the Gay Pride movement.  No accommodation was provided to Tolle after his complaint to Mechiche-Alami.

b)  Tolle's e-mail to his supervisor Mechiche-Alami on or around June 27, 2019, showed that Tolle could not work in view of the offensive conduct or object due to his religious practice: "...I will probably go home to work offsite as I still don't feel comfortable working under a flag which I find offensive for religious reasons."

c)  Upon information and belief, Tolle met with Rockwell Collins Engineer Manager Brewer and said he found the flying of the Gay Pride flag offensive due to religious reasons and that if it was the policy for Rockwell Collins to fly this every year, this would create an offensive or hostile work environment under which Tolle could not continue to work.

134.    Upon information and belief, Tolle sent complaints to Rockwell Collins Human Resources representatives, but Tolle received no response from Rockwell Collins which would indicate that Tolle was not required to alter, abandon or adopt a religious practice in order to continue working at Rockwell Collins.  This is substantiated by the facts, including but not limited to the following:

a)  Tolle's e-mail to Rockwell Collins Human Resources representative on or around July 18, 2019, made it clear that his complaint about the Gay Pride flag was due to discrimination based on his religious belief and practice, stating:  "This [Rockwell Collins]...response underscores my concerns that a person who shares my religious convictions and opinions which do not support the Gay Pride agenda will normally be treated as a homophobe or bigot within the company" and "For these reasons, I am still concerned that...[Rockwell Collins]...is a workplace which will not welcome people with my religious beliefs....Without any further information, I

will continue to consider...[Rockwell Collins]...as a place where Christians are not as welcome as others….";

b) No response from Rockwell Collins Human Resources told Tolle that he was not required to alter or abandon his religious practice in order to continue working at Rockwell Collins ;

c) No part of Wade's e-mail response to Tolle's complaints or any other communication from Rockwell Collins' Attorney Wade told Tolle that he was not required to alter or abandon his religious practice in order to continue working at Rockwell Collins;

d) Wade's e-mail did imply that Tolle may have to adopt a different religious practice and explicitly threatened to take action against Tolle if his current religious practice was deemed to be harassing of Gay Pride or LGBTQ employees by stating "...take care to communicate with co-workers in a respectful, professional, and non-discriminatory or harassing manner….Any employee who treats another in a way that contradicts this expectation will subject him or herself to discipline, up to and including termination."

e) No communications from Rockwell Collins told Tolle that he was not required to alter or abandon his religious practice in order to continue working at Rockwell Collins.

135.    Upon information and belief the Rockwell Collins offer letter to Tolle did not contain any assurance that Tolle would not have to alter, abandon or adopt a religious practice in order to work at Rockwell Collins. (See Exhibit C.)

136.    Upon information and belief, Tolle reported to Rockwell Collins management on or around September 3, 2019, that he would not be able to continue working at Rockwell Collins and would have to turn down the offer of employment because it would require Tolle to change his religious practice in order to work under the Gay Pride flag in the future: "Additionally, my religious practices do not allow me to work under a Gay Pride flag and for me to continue

60

working as an employee at Collins, it would require me to change my religious practices and to endure the display of an offensive object as a condition of my employment."

137.   Upon information and belief, Rockwell Collins never offered Tolle an accommodation in response to his complaints of Rockwell Collins conduct or object which Tolle found offensive due to religious belief or practice.  This is substantiated by the facts, including but not limited to the following:

a)  In or around June 2019, Tolle met with Mechiche-Alami when Tolle told him that continuing to work at a location that flew a Gay Pride flag was contrary to his religious practice and that Tolle would prefer to be able to work offsite or at another location where the offensive conduct or object was not being displayed as an accommodation of his religious beliefs;

b)  On or around June 27, 2019, Tolle met with Rockwell Collins Engineering Manager Brewer, when Tolle complained about the Gay Pride flag which was offensive to Tolle due to religious belief and asked Brewer if it would be possible to find a location where he could work as an accommodation of his religious beliefs and practice;

c)  Tolle never received an offer of accommodation from supervisor Mechiche-Alami or Brewer;

d)  Tolle's e-mail on or around July 17, 2019, also repeated Tolle's request for an accommodation of his religious belief and practice by finding another location where he could work without being exposed to the offensive object:  "If the company is committed to flying the Gay Pride flag every year, are there locations within the company which will not have to work under this flag?"

e)  Upon information and belief, no response to Tolle's complaints or questions by Rockwell Collins included an offer of a reasonable accommodation of Tolle's religious belief or practice.

f) Upon information and belief, Tolle believed that he had received no offer of reasonable accommodation of his religious belief or practice on or around September 3, 2019, when he notified Rockwell Collins management: "I raised my concerns with management and HR representatives, requesting both clarification of the policy and accommodation of my religious practices. Unfortunately, the responses I received from HR and the legal counsel failed to offer any accommodation of my religious practices, at any location in the company."

138.   Upon information and belief, Tolle tried to obtain relief from the harassing conduct or object and took advantage of several opportunities, offered by Rockwell Collins, to prevent or correct Rockwell Collins' conduct or object which Tolle found offensive due to religious reasons. This is substantiated by the facts, including but not limited to the following:

a) Upon information and belief, Tolle first took advantage of reporting his complaint to the supervisors in his operational chain of command, including Mechiche-Alami, and also Engineering Manager Brewer. Tolle told Mechiche-Alami that the Rockwell Collins conduct or object was so offensive to Tolle based on religious reasons that it interfered with his ability to work at the location where it was displayed, stating: "...I will probably go home to work offsite as I still don't feel comfortable working under a flag which I find offensive for religious reasons." Upon information and belief Tolle told Brewer that Tolle found the flying of the Gay Pride flag offensive due to religious reasons and that if it was the policy for Rockwell Collins to fly this every year, this would create an offensive or hostile work environment which Tolle could not continue to work under .

b) Tolle also took advantage of the Rockwell Collins' Human Resource complaint process to report his complaints of the harassing nature of Rockwell Collins' actions by sending multiple e-mails to Rockwell Collins Human Resource representatives in or around July, 2019, attempting to pursue preventive or corrective options:

- "The concerns I have about applying for a job with...[Rockwell Collins]...is whether the public display of the Gay Pride flag by the company means that...[Rockwell Collins]...is not welcoming to people who do not share the agenda that the flag undeniably represents."

- "Without any more information, I am left with the feeling that...[Rockwell Collins]...is not a place where a Christian who does not support Gay Pride should work."

- "For these reasons, I am still concerned that...[Rockwell Collins]...is a workplace which will not welcome people with my religious beliefs....Without any further information, I will continue to consider... [Rockwell Collins]...as a place where Christians are not as welcome as others...."

139.    Upon information and belief, Rockwell Collins never exercised reasonable care to prevent or promptly correct the Rockwell Collins conduct or object which Tolle found offensive due to religious belief or practice and which he reported to Rockwell Collins management.  This is substantiated by the facts, including but not limited to the following:

a)  Neither Tolle's supervisor Mechiche-Alami or Brewer told him that this would be corrected or not repeated in the future;

b)  None of Rockwell Collins' responses to Tolle's complaints about the flying of the Gay Pride flag said that this action would be corrected or not repeated in the future;

c)  The statement by Rockwell Collins' Attorney Wade showed no regret or interest in making any corrections to the company's actions and expressed pride in the past action so that it was probable that Rockwell Collins would continue the actions or flying of the object which Tolle found offensive due to religious reasons in the future.:  "We were recently proud to support

employees who are members of the LGBTQ+ community during Pride Month".

d) Tolle's e-mail communications with Rockwell Collins on or around September 3, 2019, showed that the Rockwell Collins responses did not offer any prospect of change in the company's actions or policy in the future: "Unfortunately, the responses I received from HR and the legal counsel failed to offer any accommodation of my religious practices, at any location in the company."

e) Tolle's e-mail communications with Rockwell Collins on or around September 3, 2019, showed that he believed that the continuing actions and policies at Rockwell Collins were uncorrected and would cause him to have to alter or abandon his religious practice in order to continue working at Rockwell Collins in the future: "Additionally, my religious practices do not allow me to work under a Gay Pride flag and for me to continue working as an employee at Collins, it would require me to change my religious practices and to endure the display of an offensive object as a condition of my employment."

140. Upon information and belief, the end of Tolle's work at Rockwell Collins was a constructive discharge. This is substantiated by the facts, including but not limited to the following:

a) The past harassing behavior at Rockwell Collins and prospect of continuing harassing behavior by flying an object Tolle found offensive due to religious reasons over all locations of the company for 30 days every year in the future was sufficiently severe or pervasive to alter the condition of Tolle's employment;

b) Tolle tried to take advantage of the preventive or corrective opportunities offered by Rockwell Collins including reporting his complaint to his supervisors and also reporting his complaint separately to the Human Resources representative;

c) Rockwell Collins did not exercise reasonable care to prevent or promptly address any

of the harassing behavior;

d) Based on Rockwell Collins' responses to his complaints, Tolle believed that the abusive working environment due to the harassment had become so intolerable or that the prospect of harassment in the future had become so intolerable that Tolle's resignation was his only option for getting relief from the harassment and Tolle's only fitting response.

141.   Upon information and belief, the actions by Rockwell Collins against Tolle were intentional and were reckless, callous and/or indifferent to Tolle's civil rights, which is substantiated by the facts, including but not limited to the following:

a) Rockwell Collins failed to show the same enthusiastic public support of any other minority symbol as it did for the Gay Pride flag, clearly showing a bias against minorities which do not support Gay Pride, which was noted by Tolle's e-mail on or around July 17, 2019: "For the almost 3 years I have worked with Rockwell Collins, I have never seen another minority flag flown over the company except this one [instance]....";

b) Wade's e-mail clearly showed that it was Rockwell Collins' intention to promote the preferential treatment of LGBTQ employees during the flying of the Gay Pride flag: "We were recently proud to support employees who are members of the LGBTQ+ community during Pride Month";

c) The failure of Rockwell Collins management to offer Tolle a reasonable accommodation or to offer any possibility to correct or prevent the offensive conduct or object in the future in response to Tolle's complaints caused Tolle to believe that he was required to alter or abandon his religious practice as a condition of employment in order to continue working at Rockwell Collins.

d) The failure of Rockwell Collins to take any action or offer Tolle any accommodation in response to Tolle's complaints of violations of his civil rights was reckless, callous and/or

65

indifferent to Tolle's federally protected rights.

*Claim related to Fourth Cause of Action*

142.    **For these reasons, Rockwell Collins failed to offer Tolle a reasonable accommodation or take any other action to correct or prevent the harassing conduct or object which Tolle found offensive due to Tolle's long-held religious belief and practice which prevented Tolle from working under or being associated with the Gay Pride flag. Rockwell Collins' failure to offer Tolle a reasonable accommodation or to offer any possibility to correct or prevent the offensive conduct or object in the future in response to Tolle complaints caused Tolle to believe that he was required to alter or abandon his religious practice as a condition of employment in order to continue working at Rockwell Collins.   By failing to address the offensive conduct or object and failing to offer Tolle any accommodation so that Tolle was required to alter or abandon his religious practice as a condition of continued employment, Rockwell Collins discriminated against Tolle and/or subjected Tolle to a hostile work environment in violation of the Civil Rights Act.**

*Alternative Claim related to Fourth Cause of Action*

143.    If the Court finds other reasons motivating these actions of Rockwell Collins against Tolle, the facts showing that Rockwell Collins' display of the conduct or object which was offensive to Tolle due to religious reasons and Rockwell Collins' failure to offer Tolle an accommodation which would eliminate the need for Tolle to alter or abandon his religious practice were still motivated in part based on a bias against Tolle's religious belief or practice. **In this case, by failing to address the offensive conduct or object and failing to offer Tolle any accommodation so that Tolle was required to alter or abandon his religious practice as a condition of continued employment, Rockwell Collins discriminated against Tolle and/or subjected Tolle to a hostile work environment in violation of the Civil Rights Act based on**

66

an unlawful employment practice under 42 U.S.C. § 2000e-2(m).

*2nd Claim related to Fourth Cause of Action*

144.   **By discriminating against Tolle and/or subjecting Tolle to a hostile work environment that required Tolle to adopt or alter his religious practice as a condition of continued employment in violation of the Civil Rights Act, Rockwell Collins' actions led to a constructive discharge of Tolle.**

*Alternative to 2nd Claim related to Fourth Cause of Action*

145.   **Even if termination of Tolle's work with Rockwell Collins was not a constructive discharge, Rockwell Collins' actions during the hiring process which caused Tolle to believe that he was required to abandon or alter his religious practice in order to accept the offer of employment from Rockwell Collins led to Tolle turning down the Rockwell Collins' employment offer for that reason.  By failing to offer Tolle a reasonable accommodation of Tolle's religious practice or to offer any possibility to correct or prevent the offensive conduct or object in the future in response to Tolle's complaints during the hiring process, Rockwell Collins discriminated against Tolle and/or subjected him to a hostile work environment in violation of the Civil Rights act by causing Tolle to believe that he was required to adopt or abandon his religious practice as a condition of employment.**

146.   If the facts presented in this Fourth Cause of Action are taken as true, it is probable that the actions of Rockwell Collins which required Tolle to abandon or alter his religious practice as a condition of employment were in violation of the Civil Rights Act.  The facts show that Rockwell Collins displayed conduct or object which Tolle's religious practice did not allow him to work under and that Tolle reported to Rockwell Collins on multiple occasions that he could not work under the object which he found offensive due to his religious belief and practice.  The facts also show that Rockwell Collins did not communicate to Tolle in any way

that the offensive conduct or object would not occur in the future and it was reasonable for Tolle to believe that the harassing conduct or object would continue in the future.  Furthermore, the facts show that Tolle requested an accommodation of Tolle's religious practice at several times and that Rockwell Collins did not take any action which would reasonably accommodate Tolle's religious practice after Tolle's requests.  Following the responses by Rockwell Collins to Tolle's complaints, the facts show that the actions of Rockwell Collins were intentional, Rockwell Collins was reckless, callous and/or indifferent to Tolle's federally protected rights, and that Tolle believed that he was required to alter or abandon his religious practice in order to continue working at Rockwell Collins as a statutory employee or, as a job applicant, if he were to accept Rockwell Collins' employment offer.  The facts further show that Tolle turned down the employment offer because he was required to alter or abandon his religious practice and was forced to leave end his work as a statutory employee at Rockwell Collins because he was required to alter or abandon his religious practice.  Based on the fact that the pleaded factual content should allow the Court to draw a reasonable inference that Rockwell Collins' conduct has met the EEOC's definition of harassment published under the EEOC's guidelines for religious discrimination under the Civil Rights Act and that Rockwell Collins is therefore liable for discriminating against Tolle and/or creating a hostile work environment, the claims included within this Fourth Cause of Action are based on non-conclusory statements of fact and are facially plausible.  If claims included in this Fourth Cause of Action are found to be not valid on the basis of Tolle's standing as a statutory employee after Court review, the claims included in this Fourth Cause of Action related to Tolle as an applicant for employment are still valid and facially plausible.

*Additional Claims related to Fourth Cause of Action*

**147.    As a direct and proximate cause of the aforementioned actions of Rockwell**

**Collins, Tolle has suffered injuries and damages, including but not limited to, constructive discharge, loss of past and future earnings, loss of past and future benefits, damage to professional reputation, and undue pain and suffering to Tolle and his family.**

148.   **Such violations of the Civil Rights Act by Rockwell Collins were intentional and were reckless, callous and/or indifferent to Tolle's federally protected rights and for these reasons, Tolle requests an award of compensatory and/or punitive damages pursuant to 42 U.S.C. § 1981a(a)(1).**

149.   Tolle requests award of attorney's fees pursuant to 42 U.S.C. § 2000e-5(k).

<u>AS AND FOR A FIFTH CAUSE OF ACTION</u>

150.   Tolle re-alleges and incorporates the above allegations of this complaint as if set forth fully herein.

151.   The Civil Rights Act under 42 U.S.C. § 2000e-2(k) states:   "An unlawful employment practice based on disparate impact is established under this subchapter [of the Civil Rights Act] only if (i) a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of...religion...and the respondent fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity...."

152.   A fifth cause of action due to violation of the Civil Rights Act brought to light after the actions of Collins management in this matter is the disparate treatment that the company targets toward Christian minorities when compared to the homosexual minority of employees represented by the Gay Pride flag and movement.  Upon information and belief, the flying of the Gay Pride flag by Rockwell Collins reflects a deep seated bias in favor of the Gay Pride movement and homosexual employees or others who support Gay Pride.  This is substantiated by

the facts, including but not limited to the following:

a) According to the UTC FAQ document, the only other minority flag flown was the Prisoner of War (POW) flag, which is only flown at a single location on isolated days during the year, and no other minority was permitted to fly a flag at that time;

b) The UTC FAQ document made it clear that it was company policy to favor the Gay Pride movement by stating:  "The company leadership is fully supportive of the effort to recognize PRIDE month as we believe it reflects many of our company's values...."  Noteworthy is that the document did not make any attempt to express such wholehearted support for any other minority;

c) Rockwell Collins' Attorney Wade's e-mail on or around July 23, 2019, expressed clear favor towards the minority represented by the Gay Pride flag: "We were recently proud to support employees who are members of the LGBTQ+ community during Pride Month";

d) Wade's e-mail language also reflected a bias in Rockwell Collins policies which was markedly in favor of Gay Pride while unwilling to show public support for any other minority point of view, adding the following statement after Wade's glowing comments about the LGBTQ+ community: "...the Company does not sponsor  or support any particular religious or political viewpoint, practice or membership to the exclusion of others".

153.   Upon information and belief, this bias influences the work environment at Rockwell Collins and the hiring practices used by Rockwell Collins to recruit and hire new employees.  Upon information and belief, the bias exhibited by Rockwell Collins in favor of Gay Pride and homosexual employees specifically influences Rockwell Collins' treatment of Christian employees and candidates who do not support Gay Pride due to religious reasons.  The following is an example of the facts which shows that Rockwell Collins management's default belief is that Christians are bigots:

a) The Rockwell Collins' Human Resources response on or around July 18, 2019, responded to Tolle's question about potential retaliation based on his religious objection to the Gay Pride flag with the threat that Tolle's language could be considered bigoted and justify retaliation: "If you use derogatory language to refer to someone due to their...sexual orientation...that is not tolerated."

b) Tolle's complaints to his supervisors and in his subsequent e-mail on or around July 17, 2019, noted the Rockwell Collins bias against Christians who do not support Gay Pride due to religious beliefs: "I view this flag as something which is not neutral, but something which promotes one minority's viewpoint about pride in homosexual lifestyles and treats other minority viewpoint's [*sic.*] who don't agree with them as bigots."

154. Upon information and belief, the Rockwell Collins' responses to Tolle's complaints stated that the display of the Gay Pride flag was part of a campaign by Rockwell Collins to recruit Gay candidates. Upon information and belief, this campaign is an employment practice which creates a bias in favor of Gay Pride supporters and has a negative, disparate impact on persons who do not support Gay Pride because of religious reasons. This is substantiated by the facts, including but not limited to the following:

a) The UTC FAQ document stated that the flag "reaffirms [Rockwell Collins]... commitment to attracting and engaging talented people...."

b) Tolle's complaints to his supervisors and in his subsequent e-mail on or around July 17, 2019, noted the Rockwell Collins bias which favors Gay Pride minorities and is against Christians who do not support Gay Pride due to religious beliefs: "I view this flag as something which is not neutral, but something which promotes one minority's viewpoint about pride in homosexual lifestyles and treats other minority viewpoint's [*sic.*] who don't agree with them as bigots."

c) The Rockwell Collins' Human Resources response on or around July 18, 2019, shows that Rockwell Collins management is biased against Christians who may share Tolle's objection to the campaign: "If you use derogatory language to refer to someone due to their...sexual orientation...that is not tolerated."

d) Tolle's e-mail on or around September 3, 2019 reported to Rockwell Collins management that he could not work at Rockwell Collins due to the continuing policy and actions of Rockwell Collins which were biased in favor of Gay Pride minorities and biased against Christians who do not support Gay Pride:  "For a whole month of the current year, Collins Aerospace management chose to fly a flag over our location which, to me, is an offensive object which represents a social movement that has been known for retaliatory and discriminatory practices against Christians who hold my religious convictions.  With the many examples of this over the past years, I believe that flying the Gay Pride flag over the company will be enough so that a reasonable person would consider such a pervasive action to create an intimidating or hostile workplace for persons like me."

155.    Upon information and belief, the flying of the Gay Pride flag by Rockwell Collins over all of its locations gives rise to a work environment that a reasonable person would consider intimidating, hostile or abusive for a person who does not support Gay Pride or sees the Gay Pride flag as offensive due to religious reasons.  Specifically, the flying of the Gay Pride flag by Rockwell Collins over all of its locations gives rise to a work environment that a reasonable person would consider intimidating, hostile or abusive to Christian employees.   This is substantiated by the facts, including but not limited to the following:

a) Tolle's e-mail complaint on or around July 17, 2019, stated:  "...as someone who has religious convictions which do not make me proud of Homosexuality or support the Gay Pride agenda, I was very disappointed to see...[Rockwell Collins]...promoting this flag and signaling

that people with religious convictions like mine need not apply" and "The concerns I have about applying for a job with...[Rockwell Collins]...is whether the public display of the Gay Pride flag by the company means that...[Rockwell Collins]...is not welcoming to people who do not share the agenda that the flag undeniably represents";

b) Tolle's complaints to his supervisors and in his subsequent e-mail on or around July 17, 2019, stated that he found Rockwell Collins' actions biased and non-neutral: "I view this flag as something which is not neutral, but something which promotes one minority's viewpoint about pride in homosexual lifestyles and treats other minority viewpoint's [*sic.*] who don't agree with them as bigots;

c) Tolle's response to Rockwell Collins Human Resources representative on or around July 18, 2019 stated: "This...underscores my concerns that a person who shares my religious convictions and opinions which do not support the Gay Pride agenda will normally be treated as a homophobe or bigot within the company;" and "For these reasons, I am still concerned that... [Rockwell Collins]...is a workplace which will not welcome people with my religious beliefs....Without any further information, I will continue to consider...[Rockwell Collins]...as a place where Christians are not as welcome as others....";

d) Tolle's e-mail on or around September 3, 2019, noted the hostile work environment created by the Gay Pride flag: "For a whole month of the current year, Collins Aerospace management chose to fly a flag over our location which, to me, is an offensive object which represents a social movement that has been known for retaliatory and discriminatory practices against Christians who hold my religious convictions. With the many examples of this over the past years, I believe that flying the Gay Pride flag over the company will be enough so that a reasonable person would consider such a pervasive action to create an intimidating or hostile workplace for persons like me."

73

156.    Upon information and belief, the flying of the Gay Pride flag reflects the bias of Rockwell Collins policies and actions against minority Christian employees and indicates a broader bias in the Rockwell Collins workplace which gives rise to a disparate impact to Christian employees who do not support the Gay Pride movement.  Upon information and belief, Tolle was not the only person working at Rockwell Collins who found the work environment to be intimidating, hostile or abusive due to religious reasons based on Rockwell Collins offensive conduct or object.   Upon information and belief, the intimidating, hostile or abusive work environment caused by the Rockwell Collins bias against Christian minorities and/or Rockwell Collins' flying of the Gay Pride flag contributed to other employee departure.  Upon information and belief at least one other employee at Rockwell Collins RCCT told Tolle that he was leaving and thought that the flying of the Gay Pride flag showed a radical change in the culture away from Christian values at the company compared to prior years, saying:  "the company is not like it used to be" or words to that effect.  Upon information and belief the effect, of the Rockwell Collins actions and flying of the Gay Pride flag which contributed to an intimidating, hostile or abusive work environment and represented a culture which was biased against Christian employees who do not support Gay Pride is evidence of the disparate impact which the Rockwell Collins conduct or policies has on employees who share Tolle's religious belief or practice.

157.    For these reasons, the current Rockwell Collins policies and practices are unwelcoming to Christians and give rise to a culture and work environment that a reasonable person would consider intimidating, hostile or abusive and would have a disparate impact on Christians like Tolle.  Upon information and belief, the hostile workplace will also have a disparate impact on candidates who are Christian during the hiring process.  In Tolle's case, the hostile work environment caused by the display of the object which Tolle found offensive due to religious reasons led Tolle to believe that he could not continue working at Rockwell Collins and

to turn down the employment offer which Rockwell Collins had made to him for reasons given in his e-mail on or around September 3, 2019, including:

a)  "For a whole month of the current year, Collins Aerospace management chose to fly a flag over our location which, to me, is an offensive object which represents a social movement that has been known for retaliatory and discriminatory practices against Christians who hold my religious convictions.  With the many examples of this over the past years, I believe that flying the Gay Pride flag over the company will be enough so that a reasonable person would consider such a pervasive action to create an intimidating or hostile workplace for persons like me."

158.    Upon information and belief, the Rockwell Collins conduct and policies related to flying of the Gay Pride flag also reflect a broader bias which gives rise to a disparate impact on Christians having religious practices which prevent working under a Gay Pride flag and affects how Rockwell Collins is willing to offer such persons a reasonable accommodation for that person's religious practices.  Despite Tolle requesting an accommodation for his religious practices on several occasions, Rockwell Collins never offered him a reasonable accommodation and never stated that the offensive conduct or object would be corrected in the future, so that Tolle believed that he would have to alter or abandon his religious practices in order to continue working at Rockwell Collins.  Tolle's case is an example of how Rockwell Collins continuing to fly the Gay Pride flag without offering an accommodation for religious belief or practice will have a disparate impact on Christians like Tolle.  This is substantiated by the facts, including but not limited to the following:

a)  No offer of a reasonable accommodation was made by Tolle's supervisor Mechiche-Alami or Brewer;

b)  No offer of a reasonable accommodation was communicated to Tolle by Rockwell Collins at any time after Tolle's complaint to Rockwell Collins;

c) Tolle's e-mail on or around September 3, 2019, stated: "I raised my concerns with management and HR representatives, requesting both clarification of the policy and accommodation of my religious practices....the responses I received from HR and the legal counsel failed to offer any accommodation of my religious practices, at any location in the company";

d) Tolle's e-mail on or around September 3, 2019, reported that he could not continue working at Rockwell Collins and had to turn down the Rockwell Collins employment offer for reasons including: "...my religious practices do not allow me to work under a Gay Pride flag and for me to continue working as an employee at Collins, it would require me to change my religious practices and to endure the display of an offensive object as a condition of my employment."

159.   Upon information and belief, by using objects in its recruitment campaigns that are offensive to persons who do not support Gay Pride based on religious belief or practice and refusing to offer an accommodation to persons who find the object offensive based on religious reasons, Rockwell Collins' employment and hiring practices will continue to be biased and have a disparate impact on Christians like Tolle. Rockwell Collins has not demonstrated that the use of the Gay Pride flag in its recruitment campaign is job related or demanded by business necessity. This is substantiated by the facts, including but not limited to the following:

a) At no time following Tolle's complaints, did Rockwell Collins' responses to Tolle demonstrate that the flying of the Gay Pride flag was justified by being related to a specific position being advertised or being demanded by business necessity.

*Claim related to Fifth Cause of Action*

160.   For these reasons, the use of the Gay Pride flag by Rockwell Collins is/was a particular employment practice which causes a disparate impact on the basis of religion

**and Rockwell Collins has failed to demonstrate that the challenged practice is job related for any advertised position and consistent with business necessity.  Rockwell Collins' use of the Gay Pride flag for recruitment was an unlawful employment practice based on disparate impact in violation of the Civil Rights Act and Rockwell Collins discriminated against Tolle by using such unlawful employment practice.**

*Alternative Claim related to Fifth Cause of Action*

161.    If the Court finds other reasons motivating the employment practice of Rockwell Collins, the facts of the bias in favor of Gay Pride minorities and against the religious beliefs of Christian minorities still demonstrate that religion was a motivating factor for the Rockwell Collins use of the Gay Pride flag as an employment practice.  **In this case, the use of the Gay Pride flag by Rockwell Collins is/was a particular employment practice which causes a disparate impact on the basis of religion and Rockwell Collins has failed to demonstrate that the challenged practice is job related for any advertised position and consistent with business necessity.  Rockwell Collins' use of the Gay Pride flag for recruitment was an unlawful employment practice based on disparate impact in violation of the Civil Rights Act under 2000e-2(k) and 42 U.S.C. § 2000e-2(m) and Rockwell Collins discriminated against Tolle by using such unlawful employment practice.**

162.    If the facts presented in this Fifth Cause of Action are taken as true, it is probable that the actions of Rockwell Collins giving rise to a hostile work environment which has a disparate impact on Christians and using a symbol or object as part of its recruiting and employment practices which has a disparate impact on the hiring of Christians, while failing to demonstrate that the employment practice is job related for any position and consistent with business necessity, discriminated against Tolle and/or subjected Tolle to a hostile work environment by using an unlawful employment practice in violation of the Civil Rights Act.  The

facts show that Rockwell Collins displayed conduct or object which is offensive due to religious reasons to Christians like Tolle.   The facts also show a bias against Christians like Tolle due to the hostile work environment caused by the display of the conduct or object which is offensive to Christians based on religious reasons and unwillingness of Rockwell Collins management to accommodate Tolle's religious practice in response to the complaints about the offensive conduct or object.   Furthermore, the facts show a bias against Christians in Rockwell Collins' hiring practices by advertising an offensive object as part of the company's recruiting campaigns which will have a disparate impact on Christians willing to apply and an unwillingness of Rockwell Collins to offer any accommodation to Christian applicants like Tolle.   Based on the fact that the pleaded factual content should allow the Court to draw a reasonable inference that Rockwell Collins' conduct has met the elements for an unlawful employment practice due to religious discrimination under the Civil Rights Act and that Rockwell Collins is therefore liable for discriminating against Tolle and/or creating a hostile work environment, the claims included within this Fifth Cause of Action are based on non-conclusory statements of fact and are facially plausible.   If claims included in this Fifth Cause of Action are found to be not valid on the basis of Tolle's standing as a statutory employee after Court review, the claims included in this Fifth Cause of Action related to Tolle as an applicant for employment are still valid and facially plausible.

*Additional Claim related to Fifth Cause of Action*

**163.    As a direct and proximate cause of the aforementioned actions of Rockwell Collins, Tolle has suffered injuries and damages, including but not limited to, loss of past and future earnings, loss of past and future benefits, damage to professional reputation, and undue pain and suffering to Tolle and his family.**

164.    Tolle requests award of attorney's fees pursuant to 42 U.S.C. § 2000e-5(k).

## JURY DEMAND

165.   Tolle demands a trial by jury with respect to all issues and claims properly before a jury.

## PRAYER FOR RELIEF

WHEREFORE, based on the foregoing, Tolle demands judgment as follows:

A.   Loss of past and future earnings and loss of past and future benefits pursuant to the equitable relief or other relief as the Court may deem proper under 42 U.S.C. § 2000e-5(g)(1);

B.   Compensatory and punitive damages as the Court may deem proper pursuant to 42 U.S.C. § 1981a(a)(1);

C.   An order requiring compliance pursuant to 42 U.S.C. § 2000e-5(g)(1);

D.   Costs of suit, inclusive of reasonable attorneys' fees, expert witness fees, and other litigation expenses pursuant to 42 U.S.C. § 2000e-5(k); and,

E.   Appropriate interest, costs and disbursements, and such other and further relief as the Court may deem proper.

Dated: 2/19/2020

Respectfully submitted,

By: _____

James Tolle
*Pro Se*
11171 Soldiers Court
Manassas, VA 20109
703-232-9970
jptolle@verisystem.net

79

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

JAMES TOLLE,

Civil Action No. 1:20cv174

                              Plaintiff,

                                                    COMPLAINT

v.

ROCKWELL COLLINS CONTROL TECHNOLOGIES, INC., COLLINS AEROSPACE /d/b/a Rockwell Collins Control Technologies, Inc., ROCKWELL COLLINS CONTROL TECHNOLOGIES, INC. d/b/a Rockwell Collins, Inc., ROCKWELL COLLINS, INC., COLLINS AEROSPACE d/b/a Rockwell Collins, Inc., ROCKWELL COLLINS CONTROL TECHNOLOGIES, INC. /d/b/a United Technologies Corporation, ROCKWELL COLLINS, INC. /d/b/a United Technologies Corporation, COLLINS AEROSPACE /d/b/a United Technologies Corporation, and UNITED TECHNOLOGIES CORPORATION

                              Defendants.

**LOCAL RULE 83.1(M)**
**CERTIFICATION**

**I declare under penalty of perjury that:**

**No attorney has prepared, or assisted in the preparation of this document (the present complaint).**

James Tolle
-------------------------------------------
Name of *Pro Se* Party


-------------------------------------------
Signature of *Pro Se* Party

Executed on: _____2 - 1 9 - 2 0 2 0_____

80