IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JAMES TOLLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:20-cv-174 (LMB/JFA) |
| ) | |
| ROCKWELL COLLINS CONTROL ) | |
| TECHNOLOGIES, INC., et al., ) | |
| ) | |
| Defendants. | |

MEMORANDUM OPINION

Pro se plaintiff James Tolle has filed a complaint against his former employers Rockwell Collins Control Technologies, Inc., Collins Aerospace, Rockwell Collins, Inc., and United Technologies Corporation (collectively "Rockwell Collins" or "defendants")[1] alleging religious discrimination, a hostile work environment, and failure to provide an accommodation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. Plaintiff's claims center around Rockwell Collins's decision to display a rainbow Gay Pride flag on its flagpoles for a 30-day period. Defendants have moved to dismiss. For the reasons that follow, defendants' motion to dismiss will be granted and the complaint will be dismissed.

I.

Although plaintiff's complaint and opposition contain a combined total of 217 pages, the factual allegations underlying the complaint are quite straightforward. Plaintiff, who describes himself as a practicing Catholic, worked for Rockwell Collins as a contract employee from April

---

[1] Defendants assert that plaintiff's former employer was solely Rockwell Collins, Inc., which operates under the brand name Collins Aerospace, and that all other entities named as defendants are improperly identified because they did not employ plaintiff.

2016 until May 2018 when his contract ended. Compl. [Dkt. No. 1] ¶ 21, 23, 24, 74. In November 2018, plaintiff began working on another contract with Rockwell Collins at its Sterling, Virginia location, a position he remained in until October 2019, when he left his employment with defendants. Id. 25, 29.[2]

For the month of June 2019, in honor of Pride month, Rockwell Collins displayed the rainbow Gay Pride flag on the flagpoles at each of its locations, including the Sterling, Virginia location. Id. ¶ 30. On June 15, 2019, Tolle met with his supervisor Amine Mechiche-Alami ("Mechiche-Alami") "to complain that [he] found the display of the Gay Pride flag at the Sterling location unwelcome and offensive because of his religious belief and practices," "which did not allow him to participate in any activity which publicly associated him with the Gay Pride movement." Id. ¶ 31. He further told Mechiche-Alami that flying the flag "created an unwelcome, hostile environment which interfered with his work at that location," and that "he would prefer to be able to work offsite or at another location where this offensive object was not being displayed as an accommodation of his religious beliefs." Id. On June 27, 2019, Tolle emailed Mechiche-Alami to complain further, stating "I will probably go home to work offsite as I still don't feel comfortable working under a flag which I find offensive for religious reasons." Id. ¶ 32. Tolle claims he received no response from Mechiche-Alami. Id. ¶ 33.

On July 9, 2019, after Pride month had concluded and the Gay Pride flag had been taken down, plaintiff met with an engineering manager, Eric Brewer ("Brewer"), to report his concerns about the flag. Id. ¶ 33. Plaintiff informed Brewer that if Rockwell Collins had a policy of flying the flag every year, "this would create an offensive or hostile work environment under which

---

[2] The complaint states that "[a]t all times during his work at Rockwell Collins, Tolle worked through the Bentley Global Resources' staffing contract with the Rockwell Collins' employment agency." Id. ¶ 21.

2

Tolle could not continue to work." Id. Tolle again asked whether he could work at a different location at which the flag would not be flown. Id. Brewer instructed plaintiff to contact Human Resources. Id.

On July 17, 2019, Tolle sent an email to Human Resources representative Julie Jones ("Jones") to complain about the flag. Tolle informed Jones that he viewed "this flag as something which is not neutral, but something which promotes one minority's viewpoint about pride in homosexual lifestyles and treats other minority viewpoint's [sic] who don't agree with them as bigots" and that he was "left with the feeling that [Rockwell Collins] . . . is not a place where a Christian who does not support Gay Pride should work." Id. ¶ 34. Tolle asked Jones, "[i]f I say something as an employee which does not support the flying of the Gay Pride flag . . . will I face discipline or other adverse actions by management?" Id. Tolle also reiterated his request to work at a different location that did not display the flag. Id. ¶ 35.

The next day, Jones responded that "to [her] knowledge all the [Rockwell Collins] locations that have flagpoles flew the flag." Id. ¶ 39. Jones also warned plaintiff, "[i]f you use derogatory language to refer to someone due to their . . . sexual orientation . . . that is not tolerated." Id. ¶ 41. Plaintiff replied that Jones's email "seemed to automatically assume that [his] opposition would be derogatory towards homosexuals," which "underscores [his] concerns that a person who shares [his] religious convictions and opinions which do not support the Gay Pride agenda will normally be treated as a homophobe or bigot within the company." Id. ¶ 44.

Jones also provided plaintiff a document which confirmed that Rockwell Collins displays only one other "minority flag," namely the "Prisoner of War (POW) flag," which "is only flown at a single location on isolated days during the year." Id. ¶ 40. The document also stated "[t]he company leadership is fully supportive of the effort to recognize PRIDE month as we believe it

reflects many of our company's values," but plaintiff claims it "did not make any attempt to express such wholehearted support for any other minority." Id.

On July 23, 2019, plaintiff received an email from Rockwell Collins's attorney Michael Wade, which stated:

> [W]hile individuals who work for . . . [Rockwell Collins ] . . . are free to their own personal, political, or religious views, doctrine, membership, etc., we expect employees to take care to communicate with co-workers in a respectful, professional, and non-discriminatory or harassing manner . . . . Any employee who treats another in a way that contradicts this expectation will subject him or herself to discipline, up to and including termination.

Id. ¶ 46. Wade's email went on to clarify that "the Company does not sponsor or support any particular religious or political viewpoint, practice or membership to the exclusion of others." Id. ¶ 48.

On August 1, 2019, Mechiche-Alami told Tolle to contact engineering manager Jay Dabhade concerning a possible offer to become a regular employee for Rockwell Collins. Id. ¶ 49. On August 2, 2019, Dabhade told Tolle that Rockwell Collins wanted to hire Tolle as a regular employee and that he could apply for a position once it opened. Id. On August 21, 2019, Tolle applied for a position as a regular software engineering employee. Id. ¶ 50. On August 29, 2019, a Rockwell Collins recruiter offered Tolle the job via email. Id. The proposed start date for the position was September 16, 2019. [Dkt. No. 1-3].

On September 3, 2019, plaintiff "informed Rockwell Collins that he could not accept the position due to the continuing discriminatory policies of Rockwell Collins and because he would have to abandon or alter his religious practice in order to continue working in any role at Rockwell Collins." [Dkt. No. 1] ¶ 28. Plaintiff argued that "flying an object [he] found offensive due to religious reasons over all locations of the company for 30 days every year in the future was sufficiently severe or pervasive to alter the condition of [his] employment." Id. ¶ 53.

Because of his concerns, plaintiff "left his work at Rockwell Collins in or around October 2019," which he characterizes as a "constructive discharge." Id. ¶ 29.

On September 28, 2019, plaintiff sent a letter to the United States Equal Employment Opportunity Commission ("EEOC") alleging that Rockwell Collins had discriminated against him. Id. ¶ 56. On November 16, 2019, plaintiff filed a formal complaint with the EEOC, alleging that Rockwell Collins discriminated against him and other Christians, perpetuated a hostile work environment, threatened to retaliate against him, and constructively discharged him. Id. ¶ 57. On December 4, 2019, the EEOC informed plaintiff that "[b]ased upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes." Id. ¶ 58. The letter from the EEOC also notified plaintiff that if he wished to file a lawsuit against Rockwell Collins, he must do so within 90 days. Id. ¶ 59. On January 9, 2020, Tolle filed a corrected complaint with the EEOC, which the EEOC construed as a request for reconsideration, and denied on February 13, 2020. Id. ¶¶ 60-62.

Plaintiff timely filed the instant litigation on February 19, 2020. Plaintiff's complaint does not include clearly delineated counts; instead, it sets forth five "causes of action," each of which includes a variety of subheadings, such as "[c]laim related to . . . [c]ause of [a]ction," "[a]lternative [c]laim related to . . . [c]ause of [a]ction," "2nd Claim related to . . . [c]ause of [a]ction," and "[a]dditional [c]laims related to . . . [c]ause of [a]ction." Many of these claims are repetitive, but it appears that plaintiff is generally alleging that Rockwell Collins created a hostile work environment and harassed him, failed to accommodate him, and engaged in religious discrimination, and that Rockwell Collins's actions had a disparate impact on individuals "who do not support Gay Pride because of religious reasons." Id. ¶ 154. The complaint seeks lost past

5

and future earnings and benefits, compensatory and punitive damages, "[a]n order requiring compliance," costs of suit, and "[a]ppropriate interest, costs, and disbursements." Id. at 80.

Defendants filed their motion to dismiss on May 4, 2020. Plaintiff opposes the motion, and argues that even if his existing complaint does not state a claim, the Court should allow him to amend his complaint. He has submitted a proposed amended complaint alongside his opposition. Defendants have filed a reply brief, and the motion is ripe for review. Having found that oral argument would not further the decisional process, defendants' motion to dismiss and plaintiff's request to file an amended complaint will be decided on the papers submitted.

II.

Under Federal Rule of Civil Procedure 12(b)(6), a complaint "must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted." Adams v. NaphCare, Inc., 244 F. Supp. 3d 546, 548 (E.D. Va. 2017). "Therefore, in order for a . . . complaint to survive dismissal for failure to state a claim, the plaintiff must allege facts sufficient to state all of the elements of [his or] her claim." Lucas v. Henrico Cty. Sch. Bd., 822 F. Supp. 2d 589, 600 (E.D. Va. 2011). "[A] [p]laintiff[] cannot satisfy this standard with [a] complaint[] containing labels and conclusions or a formulaic recitation of the elements of a cause of action." Id. "Instead, [a plaintiff] must allege facts sufficient to . . . stat[e] a claim that is plausible on its face." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In evaluating a motion to dismiss under Rule 12(b)(6), "a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff," id.; however, "legal conclusions pleaded as factual allegations, unwarranted inferences, unreasonable conclusions, and naked assertions devoid of further factual

enhancement are not entitled to the presumption of truth." Wikimedia Found. v. Nat'l Sec. Agency, 857 F.3d 193, 208 (4th Cir. 2017).

"In cases where the plaintiff appears pro se, courts do not expect the pro se plaintiff to frame legal issues with the clarity and precision expected from lawyers." Suggs v. M & T Bank, 230 F. Supp. 3d 458, 461 (E.D. Va. 2017). "Accordingly, courts construe pro se complaints liberally." Id. "This principle of construction, however, has its limits." Id. A court "may not be an advocate for a pro se plaintiff and must hold the complaint to certain minimal pleading standards." Hongan Lai v. Dep't of Justice, No. 5:13-cv-33, 2013 WL 3923506, at *3 (W.D. Va. July 29, 2013).

### III.

A. Hostile work environment and harassment

A Title VII claim of a hostile work environment based on religious discrimination requires a plaintiff to allege that harassment was "(1) unwelcome, (2) because of religion, (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere, and (4) imputable to the employer." E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 313 (4th Cir. 2008). "[T]o clear the high threshold of actionable harm, the conduct in question must (1) be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and (2) be subjectively perceived by the victim to be abusive." E.E.O.C. v. R&R Ventures, 244 F.3d 334, 339 (4th Cir. 2001) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). In evaluating whether a workplace is a hostile environment, courts must look to "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 339. The "standards for

judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (quoting Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 80 (1998)). "[C]omplaints premised on nothing more than . . . callous behavior by [one's] superiors . . . or a routine difference of opinion and personality conflict with [one's] supervisor . . . are not actionable under Title VII." Sunbelt Rentals, Inc., 521 F.3d at 315–16 (internal quotation marks and citations omitted). Plaintiff argues that he has met these pleading requirements, while defendants respond that the conditions alleged were not sufficiently severe or pervasive to constitute a hostile work environment. Defendants have the better argument.[3]

Even if accepted as true, the factual allegations in the complaint do not come close to stating a claim for a hostile work environment based on religion, which the Supreme Court has described as a workplace that is "permeated with discriminatory intimidation, ridicule and insult." Harris, 510 U.S. at 21 (internal quotation marks and citations omitted). The sole basis for plaintiff's claim is that defendants flew a Gay Pride flag on their flagpole for 30 days and warned plaintiff that he could not harass others or use derogatory language to refer to someone due to their sexual orientation. This conduct was not frequent, severe, or physically threatening or humiliating, nor did it unreasonably interfere with plaintiff's work performance. As defendants point out, "Rockwell Collins did not ask [p]laintiff to engage in a homosexual relationship or to condone homosexual relationships. Rockwell Collins did not ask [p]laintiff to change or modify his beliefs or require him to participate in any activities supporting the Gay Pride movement. Rockwell Collins did not ask [p]laintiff to wear a Gay Pride t-shirt, display a Gay Pride flag at

---

[3] Although defendants do not raise this argument, plaintiff's claim would also fail for the independent reason that he has not alleged that any harassment he faced was "because of religion," which is the second element of a hostile work environment claim.

his desk, or attend activities related to Gay Pride month. Plaintiff was not even required to look at the flag: he merely had to pass by it in the parking lot before he entered the building for work" and refrain from harassing others based on their sexual orientation. [Dkt. No. 10] at 3. Such conduct falls woefully short of being "severe or pervasive enough to create an objectively hostile or abusive work environment." Harris, 510 U.S. at 21.[4] Indeed, defendants' instruction that plaintiff must not harass others based on their sexual orientation was probably prudent, particularly given the Supreme Court's recent holding that employers are liable under Title VII for discrimination based on sexual orientation. See Bostock v. Clayton Cty., Georgia, No. 17-1618, 2020 WL 3146686, at *3 (U.S. June 15, 2020).

A review of cases in which the Fourth Circuit has found that a hostile work environment could exist illustrates just how far plaintiff's complaint falls short of meeting the required standard. For example, the Fourth Circuit has permitted a hostile work environment claim to proceed where the plaintiff, a Muslim, was repeatedly called "Taliban" and "towel head," told that if he were caught praying at work, "that would be the end of him," and faced extreme, daily harassment such as defacing his property. Sunbelt Rentals, Inc., 521 F. 3d at 316-319. In another case, the Fourth Circuit held that a reasonable jury could find a hostile work environment where the African American plaintiff was constantly subjected to "racial comments . . . includ[ing] the use of such words as N*****, Black B*tch, and being called a monkey on an almost daily basis," and the plaintiff's supervisor regularly "vilif[ied] anyone of African descent" and gave the plaintiff a picture of a monkey with the notation "so you'll never forget who you are." Spriggs v.

---

[4] This is not to suggest that an employer could not be liable for a hostile work environment for posting a flag or another item associated with hatred or animus based on race, color, religion, sex, or national origin; however, there is no indication that the Gay Pride flag is associated with such animus.

Diamond Auto Glass, 242 F.3d 179, 182, 189 (4th Cir. 2001).[5] Even if plaintiff had adequately alleged that his treatment at Rockwell Collins were "based on religion," which he has not, his experiences are a far cry from these examples of severe, pervasive harassment, and are much more akin to the sorts of "isolated incidents" and "routine difference[s] of opinion . . . with [one's] supervisor" that the Fourth Circuit has held are inadequate to constitute a hostile work environment. Sunbelt Rentals, Inc., 521 F.3d at 315–16 (internal quotation marks and citations omitted). The facts in this action are also similar to those in Kaohi v. John E. Potter, Postmaster General, Appeal No. 01A60231, Agency No. 1F-968-0008-05 (March 23, 2006), in which the EEOC, which is the agency charged with enforcing Title VII, found that the placement of a Gay Pride Festival parking pass in an employee's locker was insufficiently severe or pervasive to constitute actionable harassment. As defendants point out, the alleged harassment in this action is even more attenuated than that at issue in Kaohi, because the Gay Pride flag at Rockwell Collins was not specifically directed at plaintiff.

At bottom, "[w]orkplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard. Some rolling with the punches is a fact of workplace life." Sunbelt Rentals, Inc., 521 F.3d at 315. Although plaintiff may have found defendants' actions subjectively upsetting, the objective prong of the hostile work environment test is "designed to disfavor claims based on an individual's hypersensitivity." EEOC v. Fairbrook Med. Clinic, P.A., 609 F.3d 320, 328 (4th Cir. 2010). Because plaintiff's complaint does not allege treatment that objectively rises to the level of a hostile work environment, this claim must be dismissed.

---

[5] That these cases were decided at the summary judgment stage does not alter the Court's analysis; these cases are simply cited to as examples of the sorts of factual patterns that may rise to the level of a hostile work environment.

B. <u>Failure to accommodate</u>

Under Title VII, "an employer must make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship." <u>U.S. Equal Employment Opportunity Comm'n v. Consol Energy, Inc.</u>, 860 F.3d 131, 141 (4th Cir. 2017) (internal quotation marks and citations omitted). To state a claim for failure to accommodate, a plaintiff "must plead facts sufficient to state, not to prove conclusively, all elements of a religious accommodation claim: '(1) he . . . has a bona fide religious belief that conflicts with an employment requirement; (2) he . . . informed the employer of this belief; [and] (3) he . . . was disciplined for failure to comply with the conflicting employment requirement." <u>Johnson v. United Parcel Serv.</u>, Inc., No. 14-cv-4003, 2015 WL 4040419, at *9 (D. Md. June 30, 2015) (quoting <u>Chalmers v. Tulon Co. of Richmond</u>, 1010 F.3d 1012, 1019 (4th Cir. 1996)). Defendants persuasively argue that plaintiff's failure to accommodate claim fails both the first and third prongs of this test.

First, plaintiff has not adequately alleged that he was subjected to any kind of employment requirement, let alone one which conflicted with his religious beliefs. As defendants point out, "[m]erely expecting Plaintiff to attend work in the same location that a Gay Pride flag is generally displayed for one month does not amount to asking him to adhere to a conflicting 'employment requirement.' Rockwell Collins simply expected Plaintiff to come to work each day." [Dkt. No. 6] at 11. Second, even if requiring plaintiff to attend work while the flag was flying constituted a conflicting employment requirement, the complaint is devoid of allegations that plaintiff was disciplined for failing to comply with that requirement. In fact, far from disciplining him, Rockwell Collins rewarded plaintiff by offering him a permanent position with the company days after he complained about the flag. That plaintiff voluntarily declined to

11

accept that position does not support a claim that Rockwell Collins's actions were in any way disciplinary. Accordingly, plaintiff's failure to accommodate claim must also be dismissed.

C. Religious discrimination

"Title VII authorizes two causes of action against employers: disparate treatment (intentional discrimination) and disparate impact." Abdus-Shahid v. Mayor & City Council of Baltimore, 674 F. App'x 267, 274 (4th Cir. 2017) (internal citation omitted). "Although they are similar in their objectives, each cause of action has different elements." Id. "A disparate treatment claim requires proof of discriminatory motive, although [that impermissible motive] can in some situations be inferred from the mere fact of differences in treatment." Id. (internal quotation marks and citation omitted). "A disparate impact claim, in contrast, does not require proof of discriminatory motive . . . . Instead, disparate impact claims involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." Id. (internal quotation marks and citation omitted). Although it is not entirely clear from the complaint, plaintiff appears to be asserting claims for religious discrimination under both theories. Both claims fail.

1. Disparate impact

As an initial matter, some courts have held that disparate impact claims are not available in religious discrimination cases, holding that "[c]ourts recognize only 'two theories in asserting religious discrimination claims,' which are 'denominated as the 'disparate treatment' and 'failure to accommodate' theories.'" Brennan v. Deluxe Corp., 361 F. Supp. 3d 494, 505 (D. Md. 2019) (quoting Chalmers, 101 F.3d at 1017). Even if a disparate impact claim could theoretically be available to plaintiff, his claim fails on the merits because he does not sufficiently allege "that

one group of people, for reasons of religion . . . was impacted more than another" by defendant's practices. Kinnett v. Key W + Sotera Def. Sols., No. 5:18-cv-110, 2019 WL 4023192, at *6 (W.D. Va. July 19, 2019), report and recommendation adopted, No. 5:18-cv-110, 2019 WL 4018347 (W.D. Va. Aug. 26, 2019), aff'd, 798 F. App'x 765 (4th Cir. 2020).

2. Disparate treatment

A claim of disparate treatment may be established either by direct evidence or through the burden shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Where, as here, a plaintiff has not alleged direct evidence of discrimination, the elements of a prima facie[6] case of disparate treatment under Title VII are "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd sub nom. Coleman v. Court of Appeals of Maryland, 566 U.S. 30 (2012). Defendants persuasively argue that plaintiff cannot satisfy the third element.

Plaintiff has not adequately alleged that he suffered an adverse employment action. "An adverse action is one that constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th Cir. 2011). Although plaintiff resigned from his contract position and turned down Rockwell Collins's offer of a full-time position, "an employee's voluntary resignation does not, as a matter

---

[6] Although plaintiff correctly points out that he need not satisfy a prima facie case at this stage in the proceedings, "courts may look to the requirements of a prima facie case as a guide in assessing the plausibility of plaintiff's claim for relief." Craft v. Fairfax County, No. 1:16-cv-86, 2016 WL 1643433, at *4 (E.D. Va. Apr. 26, 2016).

13

of law, constitute an adverse employment action." High v. R & R Transportation, Inc., 242 F. Supp. 3d 433, 446 (M.D.N.C. 2017) (citing Honor v. Booz–Allen & Hamilton, Inc., 383 F.3d 180, 186 (4th Cir. 2004)).

Plaintiff attempts to portray his resignation and declination of Rockwell Collins's job offer as a "constructive discharge." This argument is meritless. Constructive discharge occurs "[w]here an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job." Holsey v. Armour & Co., 743 F.2d 199, 209 (4th Cir. 1984). A constructive discharge claim requires meeting a high standard --"'something more' than the showing required for a hostile work environment claim."[7] Evans v. Int'l Paper Co., 936 F.3d 183, 193 (4th Cir. 2019) (internal citation omitted). Specifically, a plaintiff "must allege facts demonstrating that he resigned and 'that he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign.'" Ofoche v. Apogee Med. Grp., Virginia, P.C., No. 19-1157, 2020 WL 2554238, at *2 (4th Cir. May 20, 2020) (quoting Green v. Brennan, 136 S. Ct. 1769, 1777 (2016)).

"Intolerability is not established by showing merely that a reasonable person, confronted with the same choices as the employee, would have viewed resignation as the wisest or best decision, or even that the employee subjectively felt compelled to resign . . . . Instead, intolerability is assessed by the objective standard of whether a 'reasonable person' in the employee's position would have felt compelled to resign, . . . . that is, whether he would have had no choice but to resign." Evans, 936 F.3d at 193 (emphasis in original) (internal quotation marks and citations omitted). When the complained-of issue "is isolated or infrequent, it is less

---

[7] As described above, the Court has already concluded that plaintiff has not satisfied the more lenient requirements of a hostile work environment claim.

likely to establish the requisite intolerability." Id. "[D]ifficult or unpleasant" or "[e]ven truly awful working conditions" may be insufficient to satisfy the intolerability requirement. Hill v. Verizon Maryland, Inc., No. 07-cv-3123, 2009 WL 2060088, at *12-13 (D. Md. July 13, 2009).

Plaintiff has not met, and indeed cannot meet, the requirements of a constructive discharge claim. Even if plaintiff had plausibly alleged that Rockwell Collins's actions were deliberate, which he has not, his factual allegations do not meet the intolerability requirement. Plaintiff's working conditions during the month of June 2019 did not meaningfully depart from the conditions under which he had previously been working; the sole difference that arose during that 30-day period was that plaintiff walked by the Gay Pride flag on his way into work, communicated with his supervisor and others about his discomfort with what the flag represents, and was advised of the company's policy prohibiting discrimination based on sexual orientation. These conditions were "isolated and infrequent," Evans, 936 F.3d at 193, and would have had virtually no impact on a reasonable person's working life. The Fourth Circuit has consistently rejected constructive discharge claims based on working conditions much more intolerable than those at issue here, including cases where the plaintiff was yelled at in front of customers, lost supervisory responsibilities, was unfairly criticized, and had to endure his "supervisor display[ing] a poster that may have been offensive to African Americans." Id. (collecting cases).

A reasonable person confronted with the same choices as plaintiff would not have resigned his contract position or declined Rockwell Collins's permanent job offer, but would rather have continued working undeterred, and simply ignored the flag if he found it offensive. "Unless conditions are beyond 'ordinary' discrimination, a complaining employee is expected to remain on the job while seeking redress." Id. (internal quotation marks and citation omitted). The

conditions plaintiff describes do not go "beyond 'ordinary' discrimination"; in fact, they do not constitute discrimination at all.[8]

Defendants have drawn a useful comparison with the Ninth Circuit's decision in Peterson v. Hewlett-Packard Co., 358 F.3d 599 (9th Cir. 2004). In Peterson, the plaintiff was a self-described "devout Christian" "who believes that homosexual activities violate the commandments contained in the Bible and that he has a duty 'to expose evil when confronted with sin.'" Id. at 601. A conflict arose between Peterson and his employer when the company began displaying "diversity posters" in its office as one component of its workplace diversity campaign, which included posters of employees with the captions "Black," "Blonde," "Old," "Gay," or "Hispanic." Id. In response, Peterson posted in his work cubicle Biblical verses condemning homosexuality. These verses were visible to other employees and violated his employer's anti-harassment policy. Peterson's managers engaged in extensive discussions with him about their diversity campaign and why his actions violated their policy. Peterson was eventually terminated for insubordination after he refused to remove the posted scriptures, and he sued alleging religious discrimination under Title VII. The Ninth Circuit rejected Peterson's claim, observing that "[a]ll that [Peterson's] managers did was explain [the company's] diversity program to [him] and ask him to treat his co-workers with respect. They simply requested that he ... not violate the company's harassment policy," which does not constitute religious discrimination. Id. at 604. The Ninth Circuit further concluded that although the defendant's

---

[8] Plaintiff further contends that "[r]equiring [him] to [a]lter or [a]bandon his [r]eligious [p]ractices" and "[d]efendants' [r]esponse [to his complaints] which [c]ontained [t]hreats of [r]etaliation" constitute adverse actions. [Dkt. No. 9] at 6-7. This argument fails because neither of those actions "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Hoyle, 650 F.3d at 337.

16

diversity campaign "devoted special attention to combating prejudice against homosexuality, . . . such an emphasis is in no manner unlawful. To the contrary, [the defendant's] efforts to eradicate discrimination against homosexuals in its workplace were entirely consistent with the goals and objectives of our civil rights statutes generally." Id. at 603.

Rockwell Collins's decision to fly the Gay Pride flag during the month of June is similarly consistent with the goals and objectives of our civil rights statutes. When plaintiff challenged that decision, Rockwell Collins, like the employer in Peterson, simply explained the company's diversity initiative and "expressed the expectation that [p]laintiff, like every other employee, come to work each day and treat co-workers in a non-discriminatory manner." [Dkt. No. 10] at 1. Rockwell Collins did not ask plaintiff to endorse homosexuality or to abandon his religious beliefs, and explicitly confirmed that it did not support one viewpoint over another and that all employees were entitled to their own beliefs. Indeed, Rockwell Collins was much more generous to plaintiff than the employer in Peterson; instead of firing plaintiff, Rockwell Collins offered him a better job. For all these reasons, plaintiff has not stated a claim for religious discrimination. [9]

---

[9] Although the complaint suggests that plaintiff was concerned about possible retaliation during his tenure at Rockwell Collins, the complaint does not set forth a separate cause of action alleging retaliation. Even if plaintiff were alleging such a claim, it would fail on the merits. "To state a claim of retaliation under Title VII, a plaintiff must allege (1) that []he engaged in protected activity, (2) that the employer took a materially adverse action against h[im] and (3) there is a causal connection between the protected activity and the adverse action." Phillips v. Univ. of Maryland Baltimore Cty., No. 19-cv-570, 2020 WL 1820080, at *11 (D. Md. Apr. 10, 2020) (internal quotation marks and citation omitted). There is no indication in the complaint that Rockwell Collins took a materially adverse action against plaintiff, nor that there was any causal relationship between plaintiff's complaints about religious discrimination and any action that plaintiff characterizes as adverse. In fact, as discussed above, far from retaliating against plaintiff, Rockwell Collins offered him a job as a regular employee, even after plaintiff lodged his discrimination complaints with his supervisor.

D. <u>Plaintiff's request to amend his complaint</u>

Plaintiff has asked that if the Court finds his complaint to be inadequate, it allow him to amend his complaint to include more detail, and has filed a proposed amended complaint alongside his opposition to the motion to dismiss. Plaintiff proposes to correct a few typos; add a statement that plaintiff had never seen Rockwell Collins fly another "minority flag"; add arguments as to why plaintiff believes the email he received from Rockwell Collins's attorney was biased; and include a statement that because the flagpole was in a "prominent location," Tolle was required to see it when he walked into work and left the building. <u>See</u> [Dkt. No. 9-1]. These amendments do nothing to cure the issues described above; accordingly, plaintiff's request to amend his complaint will be denied, and his complaint will be dismissed with prejudice.

IV.

For the foregoing reasons, defendants' motion to dismiss will be granted, plaintiff's complaint will be dismissed, and plaintiff's request to amend his complaint will be denied by an order that will be issued alongside this Memorandum Opinion.

Entered this 18 day of June, 2020.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge